95 U.S. 259
 24 L.Ed. 495
 COLORADO COMPANY
v.
COMMISSIONERS.
 October Term, 1877
 
 ERROR to the Supreme Court of the Territory of Colorado.
 This suit was brought by the plaintiff in error in the District Court within and for the county of Pueblo, to recover taxes paid by it under protest, July 1, 1874, which had been assessed for the year 1873, on certain lands situate in that county. The judgment rendered in its favor by that court having been reversed by the Supreme Court of the Territory, the cause was removed here by writ of error.
 Manuel Armijo, governor of New Mexico, granted, Dec. 1, 1843, to Gervacio Nolan, lands in a part of that province, now constituting Pueblo County, Colorado, which cover by estimate five hundred thousand acres, bounded by mountains and natural objects.
 Congress passed an act, approved July 1, 1870, 16 Stat. 646, entitled 'An Act to confirm the title of the heirs of Gervacio Nolan, deceased, to certain lands in the Territory of Colorado.' The first section confirmed the grant to the extent of eleven square leagues. The remaining sections are as follows:——
 'SECT. 2. That the exterior lines of said claim of eleven leagues, as confirmed by this act, shall be adjusted according to the lines of the public surveys as near as practicable, but in a compact form, and the claims of all actual settlers falling within the limits of the located claim above referred to shall be adjusted to the extent which will embrace their several settlements upon their several claims being established either as pre-emptions or homesteads according to law, and for the aggregate of the arears [areas] of claims so established under the pre-emption or homestead acts, the heirs of said Nolan, or their legal representatives, shall be entitled to locate a like quantity of public lands, not mineral, according to the lines of the public surveys, and not to exceed one hundred and sixty acres in one section: Provided, that such location shall be made within the bounds of the original grant by the order of Cornelio Vigil to Gervacio Nolan.
 'SECT. 3. That it shall be the duty of the Commissioner of the General Land-Office to cause the lines of the public surveys to be run in the regions where a proper location would place the said Nolan claim, and the expense of the same shall be paid out of any moneys in the treasury not otherwise appropriated; but, before the confirmation provided for by this act shall become legally effective, the heirs of the said Gervacio Nolan, or their legal representatives, shall pay the cost of so much of said surveys as inures to their benefit respectively, and that all actual settlers whose claims may be adjusted as valid shall have a right to enter their improvements by a strict compliance with the pre-emption or homestead laws.
 'SECT. 4. That upon the adjustment of said claim of the heirs of Gervacio Nolan, according to the provision of this act, it shall be the duty of the surveyor-general of the district to furnish properly approved plats to said claimants, or their legal representatives, which shall be evidence of title, the same to be done according to such instructions as may be given by the Commissioner of the General Land-Office: Provided, however, that when said lands are so confirmed, surveyed, and patented, they shall be held and taken to be in full satisfaction of all further claims or demands against the United States.
 'SECT. 5. That, immediately pon running the lines provided for in the second of this act, the surveyor-general of the district shall notify the said heirs of Gervacio Nolan, or their legal representatives, of the fact of such survey being made; and said claimants shall, within three months after notice of such survey, select and locate their said claims according to the provisions of this act, and shall, within said time, furnish the surveyor-general with a description of such location, specifying the lines of the same; and the party failing to make such selection and location, in such manner and within such time, shall be deemed and held to have abandoned their claim, and their rights and equities under this act shall cease and terminate.'
 The plaintiff in error acquired all the rights and title of the confirmees to the lands, and, a survey of them having been made pursuant to the act, selected them within the required time and in due form, to the extent, as was then believed, of eleven square leagues. A plat and descriptive list, subject to the revision of the Land Department at Washington, were prepared, and on April 27, 1872, delivered to the surveyor-general of the Territory. Entries of portions of the selected lands by claimants under the homestead and the pre-emption laws, amounting to six thousand five hundred and sixty-five acres, were subsequently approved by the Secretary of the Interior; and the plaintiff was allowed by the Commissioner of the General Land-Office to select, by way of indemnity, other lands within the limits of the original grant. An error was also committed by including nine hundred and twenty acres in excess of eleven square leagues, as, owing to the fact that at the time the plat and list were made the meander line had not been run along the south bank of the Arkansas River, where a portion of the lands were situate, it was impossible to ascertain the exact area of the selected tract. The nine hundred and twenty acres were withdrawn March 9, 1874. On the 30th of January of that year, other lands were selected in lieu of those taken by homestead and pre-emption claimants, and a descriptive list of them delivered to the surveyor-general; but that officer has not furnished either a statement of the cost of the survey or the approved plats required by the act, and the plaintiff in error has not paid any part of such cost.
 The taxes in question were duly assessed, if the lands embraced within the preliminary selection of eleven square leagues, after deducting therefrom the nine hundred and twenty acres so withdrawn, and the six thousand five hundred and sixty-five acres so entered, were on the first day of May, 1873, subject to taxation.
 Mr. John D. McPherson for the plaintiff in error.
 1. The act of Governor Armijo was ultra vires. He had no authority, under the act of the Mexican Congress of 1824 and the regulations of 1828, to grant to one person more than eleven square leagues of public land. United States v. Hartnell's Executors, 22 How. 286; United States v. Vigil, 13 Wall. 450; United States v. Vallejo, 1 Black, 451. The grant of a tract with ascertained boundaries which contains more than ten times that quantity was therefore a nullity, and the title of the plaintiff must be derived from the United States.
 2. But the grant, if in any aspect of the case valid pro tanto, did not vest a title to any specific tract of eleven square leagues. Some further official act, severing that quantity of land from the public domain, and subjecting it to the operation of the grant, was indispensable. This was not done by Mexico; and the grantee had, under the treaty or the law of nations, nothing beyond an equitable claim upon our government that eleven square leagues should be set apart to him within the limits of a larger tract. The United States might annex certain conditions precedent to the passing of the title to the lands. In this view, it is perhaps immaterial whether the act be construed as making a grant de novo, o as giving a partial confirmation to an existing but void grant.
 3. Payment by the heirs of Nolan or by their representatives of a proportionate part of the expenses of the survey was imposed as a previous and indispensable condition to the enjoyment of the benefits conferred by Congress. Until it was performed, the title to the lands abided in the United States, and they were not subject to taxation by Colorado. Railway Company v. Prescott, 16 Wall. 608; Same v. McShane et al., 22 id. 444.
 4. The 'approved plats' have never been tendered to the plaintiff by the surveyor-general, and the act declares that they shall be 'evidence of title.'
 5. The organic law of the Territory, 12 Stat. 172, declares that no tax shall be imposed on the property of the United States. The tax in question was assessed, not upon the interest or claim of the plaintiff, but upon the lands themselves. If they were subject to the taxing power of the Territory, they might have been offered to satisfy the tax; and the purchaser at a public sale, held in strict pursuance of law, would have acquired a valid title to them, free from all pre-existing claims of the United States.
 Mr. Allen A. Bradford, contra.
 1. Congress acted upon the assumption that the grant to Nolan was good for eleven square leagues, to be located within the boundaries of the original claim. The act of 1870 is a distinct recognition of his vested interest in that quantity of lands under an older and paramount title, although they were not specifically described. When the plaintiff made the authorized location, and gave the surveyor-general the requisite descriptive list, the lands were identified as the subject of the grant, and his title relates back to the date of the grant. United States v. Percheman, 7 Pet. 51; Same v. Arredondo, 6 id. 691; Garcia v. Lee, 12 id. 511.
 2. The right and title of Nolan were secured and protected by the treaty of Guadalupe Hidalgo. Henshaw v. Bissell, 18 Wall. 255. The grant of Amijo for more than eleven square leagues being void as to the excess, the United States became the owner of part of the lands within it, claiming, as Nolan did, under Mexico. By the selection in the mode prescribed by the act, his representative and the United States were mutually bound and respectively estopped. That selection was perfected before the assessment complained of was made.
 3. The fact that some of the selected lands were withdrawn, and others entered by pre-emption and homestead claimants, cannot affect this case. The tax in question was only assessed upon the remainder, reserved with the approval of the Commissioner of the General Land-Office to the plaintiff, which thence-forth ceased to be public land. Wilcox v. Jackson, 13 Pet. 498.
 4. The approved plats, which the surveyor-general is required to make out, are only evidence of a prior title. Even a patent, when issued upon the claim of a previously existing title, is only documentary evidence of the existence of that title, or of such equities respecting the claim as justify its confirmation. Langdeau v. Hanes, 21 Wall. 529. A confirmatory act of Congress makes a good title without a patent, Grignom's Lessee v. Astor, 2 How. 319; but, were it otherwise, the laws of Colorado subject to taxation lands entered at private sale or otherwise, 'whether a patent has been issued or not.'
 5. The surveyor-general has not transmitted a statement of the expenses of the survey nor 'approved plats.' His laches cannot work a forfeiture of the plaintiff's title, nor arrest the operation of the revenue laws of the Territory. According to the argument on the other side, if payment of those expenses be never exacted, the lands would be perpetually exempt from taxation, although the plaintiff should remain in possession and exercise acts of ownership over them.
 MR. JUSTICE MILLER delivered the opinion of the court.
 
 
 1
 This is a writ of error to the upreme Court of the Territory of Colorado, to bring up a judgment holding a large body of real estate owned by plaintiffs liable to taxation under the laws of that Territory.
 
 
 2
 The ground on which the exemption from taxation is asserted is that the United States retains such an interest in the land that it cannot be taxed under the authority of that Territory; and we are of opinion that the claim is well founded.
 
 
 3
 In the year 1843, Governor Armijo, of New Mexico, made a grant of land to Gervacio Nolan, bounded by monuments and natural objects, containing about five hundred thousand acres.
 
 
 4
 Upon a report made to Congress after the United States acquired the country in which this land was situated, that body was of opinion that the grant was good only to the extent of Governor Armijo's power under the laws of Mexico, namely, eleven square leagues; and it passed the act of July 1, 1870, 16 Stat. 646, confirming the grant to that extent.
 
 
 5
 But as there was no particular designation of these eleven leagues by which to determine their precise location, and as many persons had settled on lands within the boundary of the original grant, Congress declared in that act that the eleven leagues should be adjusted in a compact form, as near as possible within said boundary, and according to the lines of the public surveys. That the claims of all actual settlers falling within the eleven leagues so selected should be allowed, and that for the deficiency thus made in the eleven leagues the grantees might select other lands within the bounds of the original grant.
 
 
 6
 It was made the duty of the Commissioner of the General Land-Office to have all the necessary surveys to carry these provisions into effect made at the expense of the government in the first instance; 'but,' it is added, 'before the confirmation provided for by this act shall become legally effective, the heirs of said Gervacio Nolan, or their legal representatives, shall pay the cost of such surveys as inure to their benefit respectively.'
 
 
 7
 And, by the next section, it is provided that, when all this is done, the surveyor-general shall furnish approved plats to the claimants, which shall be their evidence of title. The plats had not been made nor the expenses paid when this tax was assessed.
 
 
 8
 We are of opinion that the clause above quoted suspends the vesting of title in the claimants, or of any perfect equitable right to the title, until the expenses of the surveys are paid; and that this was done intentionally, to secure that payment. If not paid after a reasonable time subsequent to the perfecting of the surveys and plats, there remains in Congress the power to enforce that payment by a sale of the lands, a resumption of the grant, or any other appropriate mode.
 
 
 9
 A sale of the land under territorial authority, held by this court to be a sale on a valid tax, might very seriously embarrass the assertion of the rights of the government in the premises. If the tax had been levied on the equitable claim of these holders under Nolan, whatever that is, the case might be different. But this case shows that it is the land which is taxed, and the sale would convey the title, or nothing.
 
 
 10
 We are of opinion that Railway Company v. Prescott, 16 Wall. 603, and Railway Company v. McShane et al., 22 id. 444, govern this case, and that the learned judge who delivered the opinion in the Supreme Court of the Territory, in holding otherwise, overlooked the express provision in the act of Congress, supra, that the confirmation was not to be effective until these expenses should be paid.
 
 
 11
 We agree with what he has said, that the title when perfected relates back to and is founded on the grant by Mexico; but since it was imperfect, and no particular land passed under the grant until selections were made under that act, Congress had a right to annex to the confirmation the condition above recited.
 
 
 12
 Judgment reversed, with directions to the Supreme Court of the State of Colorado, to whose jurisdiction the case is now emitted, to affirm the judgment of the District Court for the county of Pueblo.