[No. 6185.]

## THE COLORADO FARM AND LIVE STOCK COMPANY v. BEERBOHM, COUNTY TREASURER.

1.  **Taxation—State Lands—Exemption—Statutory Construction.**

    Section 2192, Genl. Laws 1877, did not provide for the taxation of any equitable or contingent interest of the purchaser, but of the land itself, and therefore, to be upheld, must be construed to apply only to consummated sales, and as fixing the estimate upon which the land was sold as the maximum valuation for assessment during the five years after the sale was completed. —P. 471.

2.  **Same—Constitutional Law.**

    Since, by § 4, art. 10, Colo. const., property belonging to the state is exempt from taxation, § 3647, Mills' Ann. Stats., relative to the sale of land granted by congress to the state for the use and benefit of the agricultural college and providing that lands sold shall be exempt from taxation so long as the title is vested in that state, is not an invalid exemption from taxation, but is a condition of the contract of sale held out as an inducement to purchase.—P. 474.

3.  **Statutory Construction—Title of Acts—Amendatory Acts.**

    The act of March 30, 1889 (Sess. Laws 1889, 313), is entitled "An act to amend section 21 of an act entitled 'an act to create the office of register of the state board of land commissioners, to prescribe the powers and duties of said board, and providing for the leasing, sale and management of the state lands, and repealing other acts on the same subject,' approved April 2, 1887," and provides that lands sold under the act shall be exempt from taxation during the time the title is vested in the state. Held, that, since this was ·germane to the subject expressed in the title of the original act, to wit, the disposal and management of public lands, the amendatory act is in compliance with § 21, art. 5, Colo. const., providing that the subject of an act shall be ·clearly expressed in its title.—P. 477.

4.  **Same—Amendments.**

    The act of April 2, 1887 (Sess. Laws 1887, p. 336), § 21, contained conditions on which public lands should be sold, and the act of March 30, 1889 (Sess. Laws 1889, p. 313), amending it, enlarged the scope of the conditions and added others within the purpose of the original act as expressed in its title, to wit, the leasing, sale, and management of state lands. Held, that the

subject-matter of the amendment was germane to the subject-matter of the section amended.—P. 479.

5. **Constitutional Law — Impairing Obligation of Contracts—Bill of Rights.**

Section 3647, Mills' Ann. Stats., relative to the sale of lands granted by congress to the state for the use and benefit of the agricultural college and providing that lands sold shall be exempt from taxation so long as the title is vested in the state, necessarily entered into a contract of sale made thereunder, so that chapter 3, Sess. Laws 1902, in so far as it attempts to subject to taxation the interest which one had acquired under his contract of purchase of such lands in contradiction of such exemption, impairs the obligation of a contract in violation of § 11, art. 2, or our bill of rights.—P. 479.

6. **Injunction—Taxation—Taxing Exempt Property.**

Injunction will lie to restrain enforcement of taxes against property exempt by law from taxation; and the court having acquired jurisdiction of such action, the subsequent wrongful act of defendant in selling the property for the taxes will not deprive it of the power to grant such ultimate relief as plaintiff may be entitled to upon the facts occurring during the pendency of the suit, and which were fully presented by the supplemental complaint.—P. 481.

*Error to the District Court of Otero County.*
*Hon. J. E. Rizer, Judge.*

Action by The Colorado Farm and Live Stock Company against C. A. Beerbohm, as county treasurer of Otero county. From a judgment for defendant, plaintiff brings error.

*Reversed and remanded.*

Messrs. WALDRON & THOMPSON, for plaintiff in error.

Mr. MARION F. MILLER, county attorney, and Mr. M. G. SAUNDERS, for defendant in error.

In the years 1890 and 1896 plaintiff in error entered into contracts with the state board of land commissioners for the purchase of certain lands donated to the state for the use and benefit of the

agricultural college by an act of congress passed July 2, 1862, and as amended March 3, 1883, and March 2, 1887.

The general assembly of Colorado accepted the provisions of the original act January 27, 1879 (Session Laws 1879, p. 175), and by an act approved March 25, 1889, accepted, ratified and assented to all the provisions of the act of 1862 and all acts supplementary thereto.

By section 9, article 9, of the constitution of the state of Colorado, a board of land commissioners is created, consisting of the governor, superintendent of public instruction, secretary of state and attorney general, "who shall have the direction, control and disposition of the public lands of the state, under such regulations as may be prescribed by law."

Section 10, article 9, provides, *inter alia,* as follows:

"Sec. 10. It shall be the duty of the state board of land commissioners to provide for the location, protection, sale or other disposition of all the lands heretofore or which may hereafter be granted to the state by the general government, under such regulations as may be prescribed by law, and in such manner as will secure the maximum possible amount therefor."

The legislation enacted in pursuance of the foregoing provisions in force at the time the plaintiff in error contracted for the purchase of the land under consideration was an act approved April 2, 1887, entitled, "An act to create the office of register of the state board of land commissioners, to prescribe the powers and duties of said board, and providing for the leasing, sale and management of the state lands, and repealing other acts upon the same subject."— Session Laws 1887, pp. 328-338.

Section 16 of this act (§ 3642, Mills' Ann. Stats.) provides:

"If any purchaser of state land, after receiving a certificate of purchase, as provided in section 15 of this act, fail to make any one of the payments stipulated therein and the same remains unpaid for one year after the time when it should have been paid, as specified in such certificate, the state board of land commissioners may sell the land again; provided, that in case of a sale, all previous payments made on account of such land shall be forfeited to the state; the land shall revert to the state, and the title thereof shall be in the state as if no such sale had ever been made."

Section 21 reads as follows:

"In case any land sold under the provisions of this act shall not, within one year after date of sale, be actually settled upon, or in good faith improved, according to the spirit of this act, such land shall revert to the state, and the purchaser shall be entitled to repayment of any purchase money he may have paid on the same."

As amended March 30, 1889 (Session Laws 1889, pp. 313, 314), section 21 reads as follows, to wit:

"Sec. 21.   That all lands sold under the provisions of this act, or any interest therein, shall be exempt from taxation for and during the period of time in which the title to said land is vested in the state of Colorado, and in case any land sold under the provisions of this act shall not, within one year after date of sale, be actually settled upon, or in good faith improved according to the spirit of this act, such land shall revert to the state, and the purchaser shall be entitled to repayment of any purchase money, deducting the amount required to pay the lease on such land for the time held by purchase at the same rate as provided for leasing school lands,

he may have paid on the same."—Section 3647, Mills'
Ann. Stats. ·

On March 22, 1902, an act was passed "In rela-
tion to public revenue, and repealing all previous
acts or parts of acts in conflict therewith."

Section 13 reads as follows:

"The term 'real estate' includes, first all lands
or interest in lands within the state to which title or
the right to title has been acquired from or ratified
by the government of the United States or from the
state; provided, that all lands purchased under con-
tract taken from the state shall, during the life of
the contract, be taxed only on the amount paid, in-
cluding the improvements thereon."

Section 3, among other things, provided that:

"Any property, real, personal or mixed, which
has by mistake or oversight been omitted from the
tax list, for any year or years, shall be subject to
assessment for all back taxes properly chargeable
thereon."

Section 123 provides:

"If any taxable property shall be omitted in the
assessment of any year or series of years, and not
listed upon the assessment roll, when discovered shall
be assessed by the assessor for the time being and
inserted on the assessment roll, and all the arrear-
ages of taxes which should have been assessed and
paid in former years charged thereon, or in case of
the failure or neglect of the assessor the same shall
be assessed by the treasurer, and by him inserted in
the warrant with the arrears of taxes as provided
for 'additional assessments.' "

The plaintiff in error had complied with all the
requirements of the statute relative to the annual
payments as they became due and the conditions set
forth in the certificates of purchase, and had paid all
taxes assessed upon the improvements made upon

the property, but had not paid nor been assessed any taxes upon any interest acquired under the contract of purchase.

In pursuance of a resolution passed by the board of county commissioners of Otero county, the defendant in error, as county treasurer of Otero county, on or about September 20, 1906, made an assessment for the years 1902, 1903, 1904 and 1905 upon the equities held by plaintiff in error under the certificates of purchase, amounting to $4,191.22. He served notice on the plaintiff in error that, unless said taxes were paid, the said lands would be sold for delinquent taxes, and afterwards advertised said several tracts of land for sale on December 10, 1906, for the taxes so assessed.

This action was brought to restrain the defendant in error from selling the lands or any part thereof for said taxes upon the date advertised, and for a judgment declaring that said lands and each and every part thereof and all interest therein are not now subject to taxation, and perpetually enjoining him and his successors from selling said lands and each and every part thereof for said taxes.

Plaintiff in error predicates its right to such relief principally upon the ground that the statute as amended by the act of 1889 constituted a contract, and if the statute of 1902 is to be construed as rendering any interest plaintiff in error may have in said lands taxable, it would be retrospective in its operation, and consequently in violation of section 11, article 2, of the bill of rights, which provides:

"That no * * * law * * * impairing the obligation of contracts, or retrospective in its operation, * * * shall be passed by the general assembly." And also in violation of section 10, article 1, of the federal constitution, which provides that:

"No state shall * * * pass any * *. * law impairing the obligation of contracts." That the levy and threatened sale created a cloud upon the title of the plaintiff, and that if the sale was permitted to take place it would constitute a further cloud, and plaintiff would suffer irreparable injury and damage thereby.

To the complaint the defendant filed his demurrer, alleging the following grounds: (1) That the court had no jurisdiction of the subject of the action; and (2), that the complaint did not state facts sufficient to constitute a cause of action.

The demurrer was sustained, and plaintiff's application for a temporary injunction denied.

Plaintiff thereafter asked and was given leave to file a supplemental complaint. Plaintiff filed a supplemental complaint, setting forth the allegations of the original complaint and in addition thereto alleged that subsequent to the filing of said original complaint and before the tax sale hereinafter stated, a *lis pendens* had been filed by the plaintiff; that the threatened sale for taxes had been made on December 10, 1906, and that the plaintiff's equities had been advertised and sold at such sale to different buyers for the taxes so assessed and also for costs of advertisement and sale and that tax certificates of purchase had issued therefor; and prayed in said supplemental complaint, not only that the taxes should be adjudged to have been illegally assessed and levied, but also that the said tax sales should be set aside and the said tax certificates issued thereon canceled.

Defendant filed a motion to strike the supplemental complaint from the files upon certain grounds, which motion was sustained, and plaintiff's supplemental complaint was stricken from the files.

To this ruling of the court the plaintiff excepted

and, electing to stand by its original and supplemental complaints, the court dismissed the plaintiff's action and ordered judgment entered in favor of the defendant, to which judgment the plaintiff in error excepted, and brings the case here on error.

Mr. Justice Goddard delivered the opinion of the court:

The defendant in error challenges the right of plaintiff in error to the relief sought, upon the grounds:

1. That the interests acquired by plaintiff in error by virtue of its contract of purchase were taxable under former and existing statutes, and that the amendment of 1889 was in contravention of section 3, article 10, of the constitution, and especially of section 6, article 10, in that it attempted to exempt from taxation property other than therein mentioned and was therefore unconstitutional and void and could not establish a contract.

Counsel refer to section 18 of the general laws of 1877, the original statute providing for the sale of public lands, as expressing an intention by the legislature to create a taxable property in the purchaser pending the contract of purchase. This section did not provide for the taxation of any equitable or contingent interest of the purchaser, but of the land itself; and therefore, to be upheld, must be construed to apply only to consummated sales and as fixing the estimate upon which the land was sold as the maximum valuation for assessment during the five-years after the sale was completed; otherwise, it must be condemned under the decision in the case of *Colorado Company v. Commissioners*, 95 U. S. 259-266.

Under other provisions of the act the sale was consummated at the time of the purchase, and the land was to be paid for in cash or a bond was re-

quired to be given to secure the deferred payments, and for the recovery of the deferred payments suit might be instituted upon such bond by the state; in other words, the state treated the transaction in the nature of a mortgage and retained the title as additional security for the payment of the deferred installments, and might, if it so elected, resell the land on default of such payments and bid in the land itself for costs of sale.

Such was the construction given to a like provision in *Courtney v. Missoula County,* 21 Mont. 591, 55 Pac. 359. It is there said:

"In a certain and qualified sense, the land intermediate the making of the contract of sale and the payment of the entire purchase price is the property of the state, for the state retains the legal title to secure the payment of the deferred portions of the purchase price; but plaintiff, the purchaser, having entered into a valid contract to pay the consideration agreed upon and to accept title to the land, which the state, on its part, is bound to convey, and having entered into occupation and made partial payments, is the owner for the purpose of taxation."

It is manifest, therefore, that this statute does not evidence an intention of the legislature to tax any inchoate equity the purchaser might acquire by his contract of purchase, apart from the land itself. This act was repealed by the act of March 2, 1887, which, as amended in 1889, provides a complete scheme for the sale and conveyance of public lands, the terms upon which they may be sold, and the consequences that shall follow in case of default of any of the payments. Under this statute no absolute, unconditional sale is made, and no equitable title vests in the purchaser until he has fully complied with the terms of his contract and has paid the full price required thereby. In such circumstances

the property is exempt from taxation under section 4 of article 10 of our constitution and on general principles of public policy independently of this provision of our constitution, while the title to the land remains in the state, to be conveyed to the purchaser only upon the voluntary payment by him of the deferred installments and upon his electing to comply with the terms expressed in the certificate of purchase.

In *Stearns v. Minnesota,* 179 U. S. 223-262, Justice Brewer, after citing authorities in support of the proposition that when full payment has been made for public lands and the full equitable title thereto has passed to the purchaser, the mere delay in furnishing to the purchaser the legal evidence of his title does not relieve the land from ordinary state taxation, said at page 251:

"But it has also been held that until the very last moment that liens or equitable rights of the United States are extinguished, no matter how trivial or small may be the right or the lien reserved, the land is not subject to state taxation.—*Railway Company v. Prescott,* 16 Wall. 603; *Railway Company v. McShane,* 22 Wall. 444; *Colorado Company v. Commissioners,* 95 U. S. 259; *Northern Pacific R. R. Co. v. Traill County,* 115 U. S. 600; *Wisconsin Central R. R. Co. v. Price County,* 133 U. S. 496."

In *Railway Company v. McShane,* 22 Wall. 444, Justice Miller uses the following language:

"That the payment of these costs of surveying the land is a condition precedent to the right to receive the title from the government, can admit of no doubt. Until this is done, the equitable title of the company is incomplete. There remains a payment to be made to perfect it. There is something to be done without which the company is not entitled to a patent. The case, clearly, is not within the rule

which authorizes state taxation of lands the title of which is in the United States. The reason of this rule is also fully applicable to this case. The United States retains the legal title by withholding the patent, for the purpose of securing the payment of these expenses, and it cannot be permitted to the states to defeat or embarrass this right by a sale of the lands for taxes.''

And in conclusion stated:

''That the state had no right to tax the lands for which the cost of surveying had not been paid, and for which no patent had been issued.''

The state, therefore, held these lands in trust free from taxation under this well settled rule, as well as under the provisions of section 4, article 10, of the constitution, which exempts from taxation property belonging to the state until such time as a purchaser, by a full compliance with the terms of his contract of purchase, becomes vested with the full equitable title thereto. Under these conditions it was clearly within the power of the state, as such trustee, in order to make the lands more valuable, to provide in a statute authorizing a sale of the lands that such sale should carry with it the same exemption.

The amendment of 1889 does not attempt to exempt from taxation any property theretofore taxable within the meaning of the statutes requiring ''all property to be taxed,'' but for the purpose of better administering the trust and to enable the state board of land commissioners ''to secure the maximum possible amount'' for the donated lands, it provided, as a material condition of the contract of sale and as an inducement to purchasers, that the lands and any interest therein should remain untaxable so long as the title was vested in the state.

We think, therefore, this amendment does not,

properly speaking, present a question as to the right of the legislature to exempt property from taxation, but rather its right to exercise a discretion necessarily within its power as the administrator of the trust imposed upon it in the control and disposition of these lands.

As was said in *Stearns v. Minnesota, supra,* at pages 240 and 241:

"The right of a state to accept such a trust cannot now be doubted. It has become a part of the judicial history of the country. These lands were not donated by congress to the state, to be used by it for its own benefit and in its own way, but were conveyed to the state in trust with the understanding that, as trustee, it should use them in the best possible manner for accomplishing the purposes of the trust. Of course, this implied that, except as restrained by its own powers, the state should make the grant as valuable as possible for the accomplishment of the purpose of the trust. Under those circumstances the peculiar nature of the trust created enabled the state to determine the limits and mode of taxation to which that property thus placed in its hands should be subjected. It might have provided that the title be retained by the state * * *. Is it to be doubted that the state, retaining the title, although authorizing the railroad company to sell, could, while that title was so retained, hold it free from any kind of taxation? Would it not be a legitimate and appropriate discharge of the trust conferred if the state adjudged that such property should be held in its own name free from all taxation until such time as its full value in cash could be obtained from some individual? If the state could retain the title free from taxation until such time as its disposition to a private purchaser enabled the railroad company to realize the full value of the

land, was it not also within its power to say that a temporary transfer to the corporation charged with the duty of constructing the railroad should also be accompanied by a like exemption from taxation?"

At page 251 it is further said:

"The state, accepting the trust given by congress, has all the powers of a trustee, and must have also all the freedom of a trustee, and may determine in what way that trust may be most successfully carried out. The mere fact that the legal title has passed by act of congress from the nation to the state is not the vital fact. Under section 3, article 9, of the state constitution, public property used exclusively for any public purpose is exempted from taxation. It is undoubtedly true, as a general rule, that a state does not tax its own property, but we do not rest on this express language of the state constitution. We place our conclusion upon higher grounds. Accepting this property as a trustee, as it had a right to do, it was not compelled to weaken the full accomplishment of that trust by subjection of the lands to taxation."

And, further, at pages 252 and 253:

"When the state accepted the position of trustee it had all the freedom of judgment which belongs to a trustee in respect to the best means of carrying the trust into execution. The legislature was the body representing the state, whose judgment was invoked as to such means, and its action was taken not so much in discharge of its constitutional obligations to the people as of its contract obligations as trustee to the grantor of the trust."

In our judgment, the claim that this amendment is inhibited by section 6, article 10, of the constitution, is untenable.

2. The validity of the amendment is also attacked upon the ground that the subject of the

amendment is not expressed in the title of the act, and that its subject-matter is not germane to the section amended, and is, therefore, in conflict with section 21, article 5, of the constitution.

The act is entitled, "An act to amend section twenty-one of an act entitled 'An act to create the office of register of the state board of land commissioners, to prescribe the powers and duties of said board, and providing for the leasing, sale and management of the state lands, and repealing other acts upon the same subject,'" approved April 2, 1887.

In *Prescott v. Beebe,* 17 Kan. 320, a case cited by counsel for defendant in error in support of another proposition, in answering a similar objection, the court said:

"The title of the act is, 'An act to provide for the sale of the school lands'; and the subject-matter of the act is fairly indicated by its title. Surely, a section defining the interests and rights acquired by a purchaser of these lands, is germane to the subject, and within the scope of the title. The state holds the land free from taxation under the provision of the tax law which exempts 'property belonging exclusively to this state.'—Gen. Stat. 1021, § 3. Should not a statute authorizing a sale prescribe whether such a sale carried with it the exemption? and could such a provision be held foreign to the subject-matter?"

The act under consideration embraces one subject, to wit, the disposal and management of the public lands, and everything contained in the section as amended relates to and is germane to that general subject, and its subject-matter is clearly indicated by the title.

The Kansas statute directed the taxation of the property sold, while the amendment under considera-

tion directed the exemption from such taxation. The only difference between the cases is, that the Kansas case had under consideration the title of the original act, while this case involves the sufficiency of the title of the amendatory act. This difference does not render the decision in the Kansas case any less an authority in favor of the validity of this amendment, it being sufficient if the title to the original act is sufficient to embrace the matters covered by the provisions of the amendatory act; in other words, the amendment is valid if it is germane to the title of the original act.—*Commonwealth v. Brown*, 91 Va. 562, 21 S. E. 357-363; *Lewis v. State*, 148 Ind. 346, 47 N. E. 675; *State v. Jones*, 9 Idaho 693, 75 Pac. 819-826; *People ex rel. Comstock v. Judge of Superior Court*, 39 Mich. 195; *Holden v. Supervisors*, 77 Mich. 202, 43 N. W. 970.

In *Commonwealth v. Brown* it is said:

"It will be observed that it is an amendatory act, and not the original act on the subject. In such case, if the title of the original act is sufficient to embrace the matters covered by the provisions of the act amendatory thereof, it is unnecessary to inquire whether the title of the amendatory act would of itself be sufficient. If the title of the original act is sufficient to embrace the matters contained in the amendatory act, whether that of the amendatory act is in itself sufficient is unimportant."

In *Lewis v. State* the following language is used:

"Where the title of an original act is sufficiently broad to include the provisions embraced in an amendatory one, it is not essential that the title of the latter, in this respect, be of itself sufficient. Strictly speaking, an amendatory statute is not to be regarded independently of the one which it amends. It may be so framed as to serve to amend certain parts, and add such supplementary sections

as are embraced in and connected with the subject expressed in the title of the original act.''

It is further contended, that the subject-matter of the amendment is not germane to the subject-matter of the section amended. The original section twenty-one contains certain conditions on which the land was sold; the amendment enlarges the scope of these conditions and adds other conditions that are within the purpose of the act as expressed in its title, to wit, the leasing, sale and management of state lands. The amendment was, therefore, cognate to the section amended, because the subject-matter in the original section is in substance the same subject-matter dealt with in the amended section.

We think, therefore, that the subject-matter of the amendatory act of 1889 was germane not only to the title of the original act, but was also germane to section twenty-one specifically amended thereby, and is not obnoxious to any of the objections urged against it; that it constitutes a valid exercise of legislative power, and necessarily entered into and became a part of any contract of purchase made thereunder, and that the provisions in the act of 1902, in so far as they attempt to subject to taxation any interest acquired by this plaintiff in error under its contract of purchase is in violation of section 11, article 2, of the bill of rights, in that it impairs the obligation of a contract.—*State of New Jersey v. Wilson*, 7 Cranch 164; *McGee v. Mathis*, 4 Wall. 143; *Stearns v. Minnesota, supra*.

It therefore follows that the action of the defendant in error in attempting to subject said interests to taxation and sale was without authority of law.

3. Nor do we think there is any merit in the further claim of defendant in error that the court was without jurisdiction to entertain this action and grant the relief prayed for.

The cases cited by defendant in error, to wit, *Insurance Co. v. Bonner,* 24 Colo. 220, and *Highlands v. Johnson,* 24 Colo. 371, are distinguishable from this case in that the property therein sought to be taxed was, in fact, subject to taxation.

These cases, therefore, do not support the contention of defendant in error that the plaintiff is not entitled to injunctive relief in the circumstances of this case.

Without further considering the cases cited by counsel in support of their respective claims, which in the main determine under what circumstances a court of equity will exercise its jurisdiction to remove a cloud from title, suffice it to say, that jurisdiction is invoked in this case for a different purpose. As before stated, the purpose of this action as originally brought, was to have the lands sought to be taxed declared not subject to taxation until the contracts for the purchase thereof have expired, and to restrain the defendant in error and his successors from selling, on the date named and until the final determination of the suit, said lands or any part thereof for the taxes for the years named, on the ground that said taxes were void; and to obtain on final hearing a decree perpetually enjoining him from selling said lands or any interest therein for said taxes. Pending the action the defendant in error, having proceeded with the sale and issued certificates of purchase therof, such facts appearing from the supplemental complaint, the further relief was asked that said sales be declared void and that the certificates of purchase issued thereon be adjudged null and void; and that any tax deed or deeds which the defendant or his successor in office might assume to issue by virtue of said pretended sales, likewise be adjudged wholly null and void. The question, therefore, as to when and under what circumstances a

court of equity will entertain jurisdiction to remove a cloud from title is not involved in this case; but the right of a court of equity to enjoin the enforcement of a tax that is void because the land sought to be taxed is exempt from taxation. Such a remedy is clearly within the jurisdiction of a court of equity, and the court having acquired jurisdiction of the action brought for that purpose, the subsequent wrongful conduct of the defendant in error will not deprive it of the power to grant such ultimate relief as the plaintiff may be entitled to upon the facts occurring during the pendency of the suit and which were fully presented by the supplemental complaint.

We think that the doctrine applicable under the facts of this case is stated by Mr. High, in his work on Injunctions, as follows:

"An important exception to the general doctrine of non-interference by injunction against the collection of the revenue because of illegality in the tax is recognized in that class of cases where the relief is sought against a tax assessed upon property which has been exempted by law from taxation. Indeed, the exception has been so uniformly recognized as to become of itself a governing rule in the class of cases now under consideration."—1 High on Injunctions (4th ed.), § 530.

And, further, at pages 504 and 505:

"And where an act of legislature, held by the court to be constitutional, exempts certain property from taxation, an injunction will be allowed against the enforcement of a tax upon such property."

This rule is approved in *Fargo v. Hart,* 193 U. S. 490, wherein it is said:

" 'If there was no right to assess the particular thing at all, * * * an assessment under such circumstances would be void; and, of course, no pay-

ment or tender of any amount would be necessary before seeking an injunction.' "

The view that we have taken of the foregoing questions renders it unnecessary to consider the further reasons urged why the attempted levy and sale of plaintiff's interest were illegal and void.

Our conclusion is, that the plaintiff's complaint alleged facts sufficient to entitle it to the injunctive and other relief sought, and that the court erred in sustaining the demurrer thereto and in striking from the files the supplemental complaint, and in rendering the judgment complained of.

The judgment is, therefore, reversed and the cause remanded, with direction to the trial court to grant the relief prayed for.

Decision *en banc.* *Reversed and remanded.*

Mr. JUSTICE MAXWELL not participating.