Mr. Justice MILLER
 

 delivered the opinion of the court.
 

 We will take up, without restating them, the three several propositions which present the grounds on which the exemption from State taxation is claimed,
 
 *
 
 and in examining their legal bearing on the case will at the same time, where it is necessary, inquire how far they are supported by the facts of the case, and will then look into the other matters set up by way of defence.
 

 The first and second of the propositions relied on by the railroad company are supposed to find sufiicient support in the case of
 
 Railway Company
 
 v.
 
 Rrescott.
 

 †
 

 That was a suit by the Kansas Branch of the Union Pacific Railroad Company to have declared void a sale of some of its land for taxes, made under State authority, and this court granted the relief on the ground that the land was not. liable to taxation at the time it was assessed for the taxes under which it had been sold. No patent had been issued to the company when the taxes were assessed, and
 
 *461
 
 the costs of surveying the land had not been paid to the government by any one. This court reaffirmed the doctrine that lands which had constituted a part of the public domain might be taxed by the States before the government had parted with the legal title by issuing a patent, but that this could only be done when the right to the patent was complete, and the equitable title fully vested in the party, without anything more to be paid, or any act to be done going to the foundation of his right. And it said that in that case the United States had a right to retain the patent until the costs of surveying the land had been paid, which had not been done, and that the right of pre-emption in lands unsold by the company within three years after completion of the road, would be defeated if a sale for State taxes could be made which would be valid.
 

 This latter ground was not necessary to the judgment of the court, as it rested as well on the failure to pay the costs of surveying the land. Aud we are now7 of opinion, on a fuller argument and more mature consideration, that the proposition is not tenable.
 

 The road was completed and accepted bj7 the President in May, 1869, aud these lands have been subject to such preemption since three years from that date, if this right can be exercised by the settler without further legislation by Congress, or action by the Interior Department. We do not now propose to decide whether any such legislation or other action is necessary, or whether any one, having the proper qualification, has the right to settle on these lands and, tendering to the company the dollar and a quarter per acre, enforce his demand for a title. It is not known that any such attempt has been made, or ever will be, or that Congress or the department lias taken, or intends to take, any steps to invite or aid the exercise of this right. It would seem that if it exists, it would not be defeated by the issue of the patent to the company, and it may, therefore, remain the undefined and uncertain right, vested in no particular person or persons, which it now is, for an indefinite period of time. The company, meantime, obtains the title, sells
 
 *462
 
 the lands when a good offer is made, and exercises all the other acts of full ownership over them, without the liability to pay taxes.
 

 We are of opinion, therefore, that this right confers no exemption from taxation, whether the land be patented or not; and so far as the opinion iu the ease
 
 of Railway Company
 
 v.
 
 Prescott
 
 asserts a different doctrine, it is overruled.
 

 But the proposition that the State cannot tax these lands while the cost of surveying them is unpaid, and the United States retains the legal title, stands upon a different ground.
 

 The act of 1864, section twenty-one, declares that before any of the lands granted by this act shall be conveyed to the company, there shall first be paid into the treasury of the United States the cost of surveying, selecting, and conveying the same.
 

 That the payment of these costs of surveying the land is a condition precedent to the right to receive the title from the government, can admit of no doubt. Until this is done, the equitable title of the company is incomplete. There remains a payment to be made to perfect it. There is something to be done without which the company is not entitled to a patent. The case, clearly, is not within the rule which authorizes State taxation of lands the title of which is in the United States.
 

 The reason of this rule is also fully applicable to this case. The United States retains the legal title by withholding the patent, for the purpose of securing the payment of these expenses, and it cannot be permitted to the States to defeat or embarrass this l'ight by a sale of the lands for taxes. If such a sale could be made, it must be valid if the land is subject to taxation, and the title would pass to the purchaser. If no such title could pass, then it is because the land is not liable to the tax; and the treasurers of the counties have no right to assess it for that purpose.
 

 But when the United States parts with her title, she has parted with the only means which that section of the statute gives for securing the payment of these costs.
 

 
 *463
 
 It is by retaining the title that the payment of costs of survey is to be enforced. And so far as the right of the State to tax the land is concerned, we are of opinion that when the original grant has been perfected by the issue of the patent, the right of the State to tax, like the right of the company to sell the lauds, has become perfect.
 

 It is admitted that part of the lands in dispute have been patented, and part of them have not. And the circuit judge in his opiniou and decree divides them into the patented and the unpateuted lands, and we concur in his opinion that there is no reason why the patented lands should not be taxed.
 

 As to those which are not patented, it may be assumed from the evidence in the case that on none of them have the costs of survey been paid or tendered to the United States, and if the}'' are all subject to that provision of the act of 1864 they are not liable, on the principle we have stated, to be taxed. It is said, however, by counsel for the State, that the Interior Department has never demanded the costs of surveying the lands within the original ten-mile limit, in cases in which they
 
 have
 
 issued patents, and do not claim them in those for which no patent has been issued; that as the non-payment of these costs, therefore, is no impediment to demanding and receiving the patents, the equitable title is complete, and they should be held subject to taxation.
 

 We held, however, in the case of
 
 Railway Company
 
 v. Prescott, that these costs of survey attached to all the lands granted to the road, whether by the original act or by the amendatory act of 1864, and we have no sufficient evidence before us that the Department of the Interior has acted on a different principle. If, however, they have done so heretofore, it is not for us to say that they
 
 will
 
 grant patents
 
 hereafter
 
 without, payment of these costs; and in a case where we are called on to decide whether such costs are lawfully demandable before the legal title of the company is perfect, we must abide by our own construction of the statute.
 

 It is said, however, that these lands have been mortgaged
 
 *464
 
 by the company under sanction of the act of Congress on that subject, and that the .mortgage conveys the legal title out of the United States, so that her rights can no longer be interposed to protect them from taxation.
 

 It is not necessary to go into the merely technical question whether the legal title passed from the United States by virtue of that mortgage and the act of Congress which authorized it, nor whether, if it ever becomes necessary to foreclose that mortgage, the rights of the United States in the laud would be divested by the proceeding, because we are satisfied that the United States, until she conveys them by patent or otherwise, has an interest, whether it be legal or equitable, which the State of Nebraska is not at liberty to divest b>y the exercise of the right of taxation.
 

 Under these views we are of opinion that the State had no right to tax the lands for which the cost of surveying had not been paid, and for which no patent had been issued; and as the decree of the Circuit Court was made in conformity with these principles, it is
 

 Affirmed.
 

 *
 

 Stated, supra, pp. 449, 450. — Rep.
 

 †
 

 16 Wallace, 603.