## LINCOLN COUNTY, OR., et al. v. PACIFIC SPRUCE CORPORATION.

Circuit Court of Appeals, Ninth Circuit.
May 21, 1928.

No. 5371.

1. **Taxation** ⊜⊶5—Public land, to which United States retains legal title as security for price or performance of conditions, is exempt from state taxation.

Perfect equitable title must be vested in grantee or purchaser of United States lands to subject them to state taxation, and so long as government retains legal title as security for payment of any part of purchase money, or to secure performance of any other conditions, land remains exempt from taxation by the state.

2. **Taxation** ⊜⊶5—Interest of purchaser of government lands under title-retaining contract held not subject to state taxation, where half of price remained unpaid.

Where United States lands were sold under contract whereby title to property remained in vendor until full payment of purchase price, interest of purchaser created by contract, under which approximately half of purchase price had been paid, was not subject to state taxation, since United States lands can be taxed by state only where government has parted with everything, except naked legal title.

Appeal from the District Court of the United States for the District of Oregon; John H. McNary, Judge.

Suit by the Pacific Spruce Corporation against Lincoln County, Or., and others. Decree for plaintiff (21 F.[2d] 586), and defendants appeal. Affirmed.

Martin L. Pipes, John M. Pipes, and George A. Pipes, all of Portland, Or., and W. H. Waterbury, of Toledo, Or., for appellants.

Wallace McCamant and W. Lair Thompson, both of Portland, Or., for appellee.

Before GILBERT, RUDKIN, and DIETRICH, Circuit Judges.

RUDKIN, Circuit Judge. On December 17, 1920, the United States Spruce Corpora-

tion, as vendor, entered into a contract with the Pacific Spruce Corporation, as purchaser, wherein the vendor agreed to sell and the purchaser agreed to buy certain timberlands and other property owned by the vendor in Lincoln county, Or. The purchase price of $2,000,000 was payable in installments, and the contract provided that the title to the property and all improvements made thereon should remain in the vendor until the purchase price was fully paid and other terms and conditions of the contract fully complied with on the part of the purchaser. It was further provided that the contract should be subject to forfeiture for default in the payment of any installment for the period of ninety days. In the year 1926, when only approximately one-half of the purchase price had been paid, the taxing officers of Lincoln county imposed a tax on the estate, right, title, and interest of the purchaser, created by this contract, in and to the property therein described, except the paramount interest therein of the United States, and threatened to impose a like tax for the year 1927. The present suit was thereupon instituted by the purchaser against the county and its taxing officers to cancel the tax already imposed and to restrain them from imposing a like tax in 1927. From a decree in favor of the plaintiff, the present appeal was prosecuted.

The relations existing between the United States Spruce Corporation and the federal government, and the purposes for which its property was acquired, were fully considered by the Supreme Court in Clallam County v. United States, 263 U. S. 341, 44 S. Ct. 121, 68 L. Ed. 328, and it was there held that the property of the corporation was not subject to taxation by the states.

[1, 2] It is well settled, of course, that when an entryman or purchaser from the United States has fully complied with all the requirements of law or his contract of purchase, and nothing remains to be done but the issuance of a patent or the execution of a deed, the government becomes a mere naked trustee of the legal title, and the property is subject to state taxation. But it is equally well settled that, before lands granted or sold by the United States can be taxed by the states as the property of the beneficial owner, a perfect equitable title must be vested in the grantee or purchaser, and the consideration and other conditions of the grant or sale must be fully paid and performed. As long as the government retains the legal title as security for the payment of any part of the purchase money, or to secure the performance of any other conditions of the grant or sale, the land is not subject to taxation by the states. Kansas P. R. Co. v. Prescott, 16 Wall. 603, 21 L. Ed. 373; Union P. R. Co. v. McShane, 22 Wall. 444, 22 L. Ed. 747; Northern Pacific v. Traill County, 115 U. S. 600, 6 S. Ct. 201, 29 L. Ed. 477; Irwin v. Wright, 258 U. S. 219, 42 S. Ct. 293, 66 L. Ed. 573; United States v. City of Milwaukee (C. C.) 100 F. 829; Mint Realty Co. v. Philadelphia, 218 Pa. 104, 66 A. 1130, 11 Ann. Cas. 588; Copp v. West Virginia, 69 W. Va. 444, 71 S. E. 580, 35 L. R. A. (N. S.) 669.

Thus, in United States v. City of Milwaukee, supra, it was held that a tax imposed by the city on government property purchased from the Secretary of the Treasury under an executory contract of sale was void. Similar rulings were made in Copp v. West Virginia and Mint Realty Company v. Philadelphia. In most, if not all, of the cases cited, the tax was imposed on the land itself; but there is no intimation in any of the opinions that some lesser interest in the property might be taxed. On the contrary, in Mint Realty Co. v. Philadelphia, the court said:

"The attempt is made to take this case out of the general rule by showing that the United States, by article of agreement, had sold and agreed to convey the property to the appellee, and this company being in possession, receiving rents and exercising all rights of ownership, has such an equitable title as to subject the property to taxation in its name. This contention would be perfectly sound if the rule of taxation applicable thereto could be determined by Pennsylvania law. The difficulty, however, is that in the present case our state law has no application, and it becomes necessary to look to the decisions of the federal courts in order to determine the rights of the parties."

And it was held that under the decisions of the federal courts the interest of the purchaser was not subject to taxation. So, in Irwin v. Wright, supra, an attempt was made by the taxing officers of Arizona to tax the equity of homestead entrymen after they had complied with all the requirements of the homestead law (12 Stat. 392), but before they had fully complied with the requirements of the Reclamation Act (32 Stat. 388), and in holding that the equity of the homesteaders was not subject to taxation, although their rights were assignable, the Chief Justice said:

"The rule established by the decisions of this court is that, by virtue of its sovereignty and the constitutional power of Congress to dispose of and make all needful rules and

regulations respecting the territory or other property belonging to the United States, no State can tax the property of the United States within its limits. * * * An exception to this principle, or rather its nonapplication, is recognized where the government has by final certificate parted with the equitable title to a person subject to state taxation and retains only the legal title by its delay in issuing the patent. Not until the equitable title passes can the state tax the entryman, except in the case of mining claims (the reason for which we shall presently consider), and in cases in which express authority to tax is given in the statute. * * *

"We think, therefore, that the reason for the rule, making the acquisition of the equitable title the line between nontaxability and taxability, is stronger in case of reclamation homestead entrymen than in the instances where, before the Reclamation Act, it always applied. * * *

"It is argued that it is not government property which is sought to be taxed here before final certificate, but only the interest of the entryman. In the case at bar, the taxes were in the first instance assessed against the land, but later the Board of Supervisors changed the form of the assessment so as to insert the word 'equity' in the record. The power of the Supervisors, under the Arizona statutes, to order such a change in past assessments, is challenged. We do not think it necessary to decide this. It is enough to say that the entrymen did not have the equitable title until they received the final certificate and their interest in the government's land, until that issued, was, for the reasons given, not taxable. Whether an interest like that of the entrymen in land not belonging to the government would be taxable property, we have no occasion to consider."

If, as there declared, the acquisition of the equitable title is the dividing line between taxability and nontaxability, it would seem clear that the tax in this case cannot be sustained.

It is sometimes said that the purchaser under an executory contract of sale is the owner in equity, even before the payment of the purchase price; but within the rule we are now discussing the equitable title means only such as vests in the purchaser upon payment of the purchase price in full, leaving nothing but the naked legal title in the vendor, for it would seem that the equitable title of the homesteaders in the case to which we have referred was superior to the rights of the purchaser in this case, where the title was reserved by the vendor until the purchase price was fully paid and all other conditions of the contract fully complied with. In other words, there was reserved, not only the naked legal title, but the equitable title as well, and the final test is: Has the government parted with everything except the naked legal title? If so, the property is subject to taxation; otherwise, it is not.

The recent case of City of New Brunswick v. United States, 48 S. Ct. 371, 72 L. Ed. ——, decided by the Supreme Court April 9, 1928, is not to the contrary. In that case the Housing Corporation entered into contracts for the sale of lots, the stipulated price to be paid in installments. The contracts provided that the vendor should execute special warranty deeds for the property upon the payment of 10 per cent. of the purchase price, and that the purchasers should execute and deliver a note or notes, with mortgages on the property to secure the balance of the purchase price, in accordance with the terms of the contracts of sale. The purchasers paid the 10 per cent. of the purchase price as agreed, and thus became entitled to deeds; but the Housing Corporation refused to execute the deeds, because of some controversy over taxes assessed against the property by the city. Under these facts, the court held that the property was subject to taxation, but that the lien of the vendor for the unpaid purchase price was superior to the tax lien, because of a provision in the statute authorizing the sale: "That no sale or conveyance shall be made hereunder on credit without reserving a first lien on such property for the unpaid purchase money." 41 Stat. 224.

It will thus be seen that the purchasers had complied with all the conditions of the contract, so as to entitle them to deeds, and the case was therefore controlled by the general rule to which we have referred. The court did not hold, as we understand it, that the property was subject to taxation by the city simply because the purchasers had paid 10 per cent. of the purchase price under the executory contracts of sale. If it did so hold, the decision would seem to be contrary to earlier decisions of the same court and to other authorities we have cited.

Having reached the conclusion that the purchaser here had no such interest in the property as was subject to taxation by the county because of the title reserved by the vendor, we deem it unnecessary to consider whether such rights as the purchaser acquired are taxable under the present laws of the state of Oregon. We reach this conclusion with reluctance, because it seems unjust

to the county, especially so in view of the fact that the purchaser is authorized to remove the timber from the land, which constitutes its chief value, and little will remain for taxation or other purposes when the agreement is finally consummated. If it was definitely understood at the time the contract was executed that the property would not be subject to taxation until the purchase price was fully paid, the government would receive the benefit of the exemption by the increase in the purchase price; but the authority to tax was so uncertain that it is at least doubtful whether that element was taken into consideration when the property was sold, so that in all probability the exemption, if allowed, will inure exclusively to the benefit of the purchaser. But this apparent injustice does not change the law.

The decree is affirmed.