## S. R. A., INC. *v.* MINNESOTA.

Nos. 254 and 255.   Argued January 3, 1946.—Decided March 25, 1946.

*Roland J. Faricy* argued the cause and filed a brief for petitioner.

*Andrew R. Bratter* argued the cause for respondent. With him on the brief were *J. A. A. Burnquist,* Attorney General of Minnesota, *Geo. B. Sjoselius,* Deputy Attorney General, and *James F. Lynch.*

MR. JUSTICE REED delivered the opinion of the Court.

A question as to the power of the State of Minnesota to tax realty within the boundaries of that State, when the legal title remains in the United States, is presented by this writ of certiorari.[1] The State ceded jurisdiction over the realty in accordance with the exclusive legislation

[1] No. 255, *S. R. A., Inc.* v. *Minnesota,* is in all respects like No. 254, except that the state tax was laid for the year 1941. This opinion in No. 254 governs the result and the same judgment of affirmance is directed. See 219 Minn. 517, 18 N. W. 2d 455; certiorari granted, 326 U. S. 703.

clause of the United States Constitution, Article I, § 8, Clause 17.

The realty in question was conveyed to the United States in 1867 as a site for a building to house a post office, a customs office and offices for various departments and agencies of the United States. The building was eventually vacated and the property sold in 1939 by the Director of Procurement of the Department of the Treasury under the authority of an act for the disposal of surplus federal real estate. 49 Stat. 885.

It was purchased on public sale and improved by petitioner who was in full possession with right of user under an executory contract of sale between it and the United States at the time of the levy of the tax. That contract provided for a cash payment and annual instalments, possession by petitioner so long as it met the terms of the contract, and for repossession by the United States, with retention of prior instalments of the purchase price, upon the purchaser's failure to comply with any term or condition of the contract. Upon repossession, the United States was authorized to resell the realty and recover any resulting deficiency from the petitioner. All obligations due under the contract had been met. The major portion of the contract price had not fallen due and was unpaid. The contract permitted leases to others in subordination to the rights of the United States. The contract required the United States to execute and deliver a quit claim deed for the realty to the petitioner upon its completion of the requirements of the contract.

With the ownership of the property in the situation just described, taxes for general and special purposes were levied on the property for 1940 under the usual Minnesota procedure. The tax was stated in the assessment to be on the realty "subject to fee title remaining in the United States of America." Petitioner duly filed its objections in the proper state district court, pursuant to statute. 1

Minn. Stat. (1941) Ch. 278. So far as concerns this review, the objection to the tax was based on a claimed exemption of the realty from state taxation because title to all of the premises was in the United States. The exemption was sustained by the trial court. The Supreme Court of Minnesota reversed that judgment and denied exemption. *In re S. R. A., Inc.*, 213 Minn. 487, 7 N. W. 2d 484. On retrial, the lower court held the realty liable for the tax and declared a lien "upon such parcel of land as against the estate, right, title, interest, claim, or lien, of whatever nature, in law or equity, of every person, company, or corporation, subject however, to the prior rights, liens and interests of the United States of America . . ." This second judgment was affirmed on appeal. *In re S. R. A., Inc.*, 219 Minn. 493, 18 N. W. 2d 442.

Certiorari was sought under § 237 (b) of the Judicial Code. It was granted because of the importance and uncertainty of the question of the right of a State to tax realty sold by the United States in possession of a buyer from the Government under a contract of sale with uncompleted conditions for execution and delivery of the muniments of title. 326 U. S. 703.[2]

The supremacy of the Federal Government in our Union forbids the acknowledgment of the power of any State to tax property of the United States against its will. Under an implied constitutional immunity, its property and operations must be exempt from state control in tax, as in other matters. *M'Culloch* v. *Maryland*, 4 Wheat. 316, 425, *et seq.; Van Brocklin* v. *Tennessee*, 117 U. S. 151, 177;

---

[2] Varying results have been reached by other courts in similar situations. *Lincoln County* v. *Pacific Spruce Corp.*, 26 F. 2d 435; *Ken Realty Co.* v. *Johnson*, 138 F. 2d 809; *Mint Realty Co.* v. *Philadelphia*, 218 Pa. 104, 66 A. 1130; *Copp* v. *State*, 69 W. Va. 439, 71 S. E. 580; *ABR Corp.* v. *Newark*, 133 N. J. L. 34, 42 A. 2d 296. See also *Bancroft Investment Corp.* v. *Jacksonville*, 157 Fla. 546, 27 So. 2d 162.

*United States* v. *Allegheny County*, 322 U. S. 174, 176–77. This postulate, as a matter of federal law, forces final decision of the validity of claimed exemptions under this immunity upon this Court. *United States* v. *Allegheny County, supra,* 183, and cases cited. The impact of state taxation on federal operations may be so close and threatening as to compel judicial intervention to declare the state tax invalid, as in the *M'Culloch* case, or so remote and incidental as to justify a federal court in refusing to relieve a taxpayer from a state tax. *Alabama* v. *King & Boozer,* 314 U. S. 1. The line of taxability is somewhat irregular and has varied through the years.[3]

The right of a State to tax realty directly depends primarily upon its territorial jurisdiction over the area. The realty of petitioner had been conveyed to and used by the United States for the essential governmental activities which authorized the exercise of its exclusive legislative jurisdiction.[4] Exclusive legislative power is in essence complete sovereignty.[5] That is, not only is the federal property immune from taxation because of the supremacy of the Federal Government but state laws, not adopted directly or impliedly by the United States, are ineffective

[3] Compare *Mayo* v. *United States,* 319 U. S. 441, with *Alabama* v. *King & Boozer, supra,* and *United States* v. *Allegheny County, supra,* p. 176, notes 1 and 2, and cases cited. See *Wilson* v. *Cook,* 327 U. S. 474.

[4] Art. I, § 8, Cl. 17:

"The Congress shall have Power . . .

"To exercise exclusive Legislation in all Cases whatsoever, over such District (not exceeding ten Miles square) as may, by Cession of particular States, and the Acceptance of Congress, become the Seat of the Government of the United States, and to exercise like Authority over all Places purchased by the Consent of the Legislature of the State in which the Same shall be, for the Erection of Forts, Magazines, Arsenals, dock-Yards, and other needful Buildings; . . ."

[5] *Fort Leavenworth R. Co.* v. *Lowe,* 114 U. S. 525, 532–33; *United States* v. *Unzeuta,* 281 U. S. 138; *Surplus Trading Co.* v. *Cook,* 281 U. S. 647, 652–56; *Bowen* v. *Johnston,* 306 U. S. 19.

to tax or regulate other property or persons upon that enclave.[6]   It would seem that the United States obtained this property in compliance with cession by Minnesota of exclusive sovereignty.   Act of February 9, 1867, Minn. Laws 1867 Jan., Ch. LXXIX.   The acceptance by the United States at that time of the power ceded is presumed.[7]   This Court apparently has never directly passed upon the effect on federal sovereignty of the property's transfer by the United States to private hands.

In this instance there were no specific words in the contract with petitioner which were intended to retain sovereignty in the United States.   There was no express retrocession by Congress to Minnesota, such as sometimes occurs.[8]   There was no requirement in the act of cession for return of sovereignty to the State when the ceded territory was no longer used for federal purposes.[9]   In the absence of some such provisions, a transfer of property held by the United States under state cessions pursuant to Article I, § 8, Clause 17, of the Constitution would leave numerous isolated islands of federal jurisdiction, unless the unrestricted transfer of the property

---

[6] *Stewart & Co.* v. *Sadrakula,* 309 U. S. 94; *Surplus Trading Co.* v. *Cook, supra,* note 5.

[7] *Fort Leavenworth R. Co.* v. *Lowe, supra,* p. 528; *Benson* v. *United States,* 146 U. S. 325, 330; *Mason Co.* v. *Tax Comm'n,* 302 U. S. 186, 207.

At the time of the purchase, 5 Stat. 468, later incorporated in R. S. § 355, was in force.   As it required consent of the State of the situs before expenditures of public money by the United States on locations purchased for needful buildings, it is to be presumed that all requirements were satisfied.   R. S. § 355 has been consistently construed to require full sovereignty in the United States.   8 Op. A. G. 102; 10 Op. A. G. 34; 20 Op. A. G. 611; 31 Op. A. G. 265; 38 Op. A. G. 341; 39 Op. A. G. 285.   R. S. § 355 has been superseded.   40 U. S. C. § 255; *Adams* v. *United States,* 319 U. S. 312.

[8] 30 Stat. 668; 9 Stat. 35.

[9] Compare *Palmer* v. *Barrett,* 162 U. S. 399; *James* v. *Dravo Contracting Co.,* 302 U. S. 134, 144.

to private hands is thought without more to revest sovereignty in the States. As the purpose of Clause 17 was to give control over the sites of governmental operations to the United States, when such control was deemed essential for federal activities, it would seem that the sovereignty of the United States would end with the reason for its existence and the disposition of the property. We shall treat this case as though the Government's unrestricted transfer of property to nonfederal hands is a relinquishment of the exclusive legislative power.[10] Recognition has been given to this result as a rule of necessity.[11] If such a step is necessary, Minnesota showed its acceptance of a supposed retrocession by its levy of a tax on the property. Under these assumptions the existence of territorial jurisdiction in Minnesota so as to permit state taxation depends upon whether there was a transfer of the property by the contract of sale.

In determining the meaning and effect of contracts to which the United States is a party, the governing rules of law must be finally declared by this Court. *United States v. Allegheny County, supra,* 183. Turning to the contract, we find in it no characteristics which differentiate it from the normal executory contract for the sale of land with partial payments. Normally, contracts between the United States and others are construed as contracts between private parties. *Lynch v. United States,* 292 U. S.

---

[10] Compare *Palmer v. Barrett, supra,* with *Arlington Hotel v. Fant,* 278 U. S. 439.

[11] *Fort Leavenworth R. Co. v. Lowe,* 114 U. S. 525, 542: "It is necessarily temporary, to be exercised only so long as the places continue to be used for the public purposes for which the property was acquired or reserved from sale. When they cease to be thus used, the jurisdiction reverts to the State."

The reference to federal control of "reserved" land probably relates to the supremacy of the United States for the management of governmental affairs in the absence of exclusive legislative power. See page 539.

571, 579. This Court has been of the opinion that contracts for the sale of land transfer to the purchaser the equity in the land. We think this contract did so. That equity is realty. It was owned by the vendee. The United States retains only a legal title as security. In substance it is in the position of a mortgagee.[12] Minnesota has the same rule. *In re S. R. A., Inc.,* 219 Minn. 493, 507; 213 Minn. 487, 495, 499. Therefore when petitioner entered into possession of this real estate under its contract of purchase, the taxed property by the transfer became subject to the territorial jurisdiction of Minnesota.[13]

Territorial jurisdiction in Minnesota does not dispose of this tax problem. The nub of this case, that is the immunity from state taxation of property to which the United States holds legal title, remains. Minnesota took care to leave unassessed whatever interest the United States holds. The levy and judgment was "subject to fee title remaining in the United States of America." 219 Minn. at 496. Although Minnesota real estate taxes are assessed on the parcel of land as a "unitary item" including "all rights and privileges," the State does not claim that a tax sale will divest the fee title of the United States. 213 Minn. at 493, 499. Apparently the State is of the view that the equitable interest alone may be sold under its laws, leaving the fee of the United States in its position of priority over any interests which may be transferred by the tax sale. 219 Minn. at 513. Such a construction of the state law is binding upon this Court. It

---

[12] *Lenman* v. *Jones,* 222 U. S. 51; *Gunton* v. *Carroll,* 101 U. S. 426, 430–31; *Bissell* v. *Heyward,* 96 U. S. 580; *Secombe* v. *Steele,* 20 How. 94, 103–104. Compare 8 Thompson, Real Property, § 4579; 2 Sugden, Vendors (14th Ed.), 375. See *Lowery* v. *Peterson,* 75 Ala. 109. Compare Restatement, Conflict of Laws, § 209.

[13] We intimate no view as to the legislative status of this property, if it is repossessed by the United States. See the cases cited in note 10, *supra.*

does not impinge upon federal rights. So long as that situation exists, the determination of the State cannot be challenged here. The possibility of repossession by the United States is not enough to block a tax sale in which the paramount rights of the United States are protected. *Baltimore Shipbuilding Co.* v. *Baltimore,* 195 U. S. 375, 381–82; *New Brunswick* v. *United States,* 276 U. S. 547, 556; *United States* v. *Alabama,* 313 U. S. 274, 282.[14]

Petitioner's argument goes beyond the question of the enforcement of the assessed tax. It is bottomed on the implied constitutional immunity from state taxation of property for which the United States holds title subject to unfulfilled conditions. In *Van Brocklin* v. *Tennessee,* 117 U. S. 151, that State sought to tax realty of the United States which was not held for the purposes or under the authority of the Cession Clause. Certain lots had been purchased by and conveyed to the United States pursuant to a federal tax sale. 12 Stat. 423, § 7. These lots were later transferred by deed or certificate of release to private owners. 17 Stat. 330; 18 Stat. 313. Tennessee assessed its own taxes upon the entire property for the years during which title to the lots was in the United States and attempted to collect them from the private owners after the transfer. Tennessee's claim was founded on the absence of state cession. This Court refused to permit the State's action, saying at page 179:

> "While the United States owned the land struck off to them for the amount of the taxes because no one would pay more for it, and until it was sold by the United States for a greater price, or was redeemed by

---

[14] As the case was tried below on the theory of direct or implied immunity because the fee was in the United States, we neither consider nor decide the effect of a tax sale of petitioner's rights on its contract with the United States. See *Wilson* v. *Cook,* 327 U. S. 474, 483. Compare 41 U. S. C. § 15 with *Freedman's Saving Co.* v. *Shepherd,* 127 U. S. 494.

the former owner, the United States held the entire title as security for the payment of the taxes; and it could not be known how much, if anything, beyond the amount of the taxes the land was worth. To allow land, lawfully held by the United States as security for the payment of taxes assessed by and due to them, to be assessed and sold for State taxes would tend to create a conflict between the officers of the two governments, to deprive the United States of a title lawfully acquired under express acts of Congress, and to defeat the exercise of the constitutional power to lay and collect taxes, to pay the debts and provide for the common defence and general welfare of the United States."

The posture of the land sought to be taxed in the *Van Brocklin* case differentiates it from that presently under consideration. The United States there held complete title upon the assessment dates as a purchaser at a tax sale. The entire bundle of rights in the property was assessed by Tennessee. As a matter of grace, the United States had granted a right to the taxpayer to redeem. It was like an option to purchase. The statute might have authorized the sale of the land to any purchaser without consideration for the former owner. The United States, here, as we have demonstrated above, had transferred at the time of the assessment equitable ownership to the purchaser and has only a legal title as security for the unpaid purchase price. See *United States* v. *Allegheny County,* 322 U. S. 174, 188.

Petitioner presses various land grant cases upon us as announcing the controlling rule.[15] The principle which petitioner extracts from these cases is that alienation of United States property does not pass an interest to the vendee taxable by a State until all conditions precedent for

---

[15] *Railway Co.* v. *Prescott,* 16 Wall. 603; *Railway Co.* v. *McShane,* 22 Wall. 444; *Northern Pacific R. Co.* v. *Traill County,* 115 U. S. 600; *Irwin* v. *Wright,* 258 U. S. 219.

the delivery of the deed have been complied with. In the present case, petitioner asserts, the full amount of the purchase price must be paid before the State can tax. Such a rule can be extracted by the literal reading of certain phrases in the land grant cases.[16] The reason for the rule was said, in the earlier cases, to be that a state tax sale would defeat the government lien for surveying or other costs because the state sale would pass a title free from lien of the United States.[17] As heretofore shown, *ante,* p. 565, this ground for refusing power to Minnesota to tax is not present in this case, since Minnesota holds that the lien of the United States will remain paramount.

*Irwin* v. *Wright* involved the taxability by a State of property occupied by an entryman under the Reclamation and Homestead Acts who had not received his required final certificate of land clearance, pages 227, 228, 232. The reason for the rule against state taxation until the equitable title passes from the United States to the entryman was there placed upon the policy of the Government to require those who sought government land to perform the required conditions of residence or improvement before beneficial title, subject to state taxation, passes from the United States to the locator. This transfer was said not to take

---

[16] *Irwin* v. *Wright, supra,* 228, 229, 232, 233; *Northern Pacific R. Co.* v. *Traill County, supra,* at 609; *Railway Co.* v. *McShane, supra,* at 462.

[17] 16 Wall. at 608; 22 Wall. at 462; 115 U. S. at 610. See also *Colorado Co.* v. *Commissioners,* 95 U. S. 259. In the *McShane* case, itself, which clearly set out the above reason for non-taxability, it was recognized that the federal right of pre-emption for the benefit of settlers would not be affected by a state tax sale. This Court therefore reversed its former judgment in the *Prescott* case that land held by the railroads subject to this pre-emption could not be taxed by a State. 22 Wall. at 461. Congress promptly terminated the land tax exemption after the Traill County decision by subjecting railroad land grants to state taxation before payment of conveyancing costs. 43 U. S. C. § 882.

place until the certificate was issued. Page 232. The prohibition of state taxation until the certificate was issued was one of the means by which the Government furthered its public policy of land settlement. After compliance with the condition and before patent, the State could tax.[18]

We think the public policy of national development and federal tax collection justify the limitation on state taxing power announced by the foregoing decisions. We do not, however, conclude that their rationale leads to an exemption from state taxation of all lands in which the United States holds legal title as security for the purchase price. To say that the payment of the purchase price is a necessary condition precedent to the loss of federal immunity is to make the rule too mechanical. It should be sufficiently flexible to subject real private rights, disentangled from federal policies, to state taxation. This has been the holding in mining claims.[19] Where beneficial interest has passed to a vendee, the retention of legal title does not give a significant difference from the situation of a deed with a lien retained or a mortgage back to secure the purchase money.

That was the interpretation given the facts in *New Brunswick* v. *United States*, 276 U. S. 547.[20] The City of New Brunswick, under authority of New Jersey, sought to tax lots in the possession of purchasers from the Housing Corporation, a corporation wholly owned by the United States and therefore treated as the United States. These purchasers had paid enough of the purchase price—ten per cent—to entitle them to deeds under their contracts but had not paid the entire purchase price. The deeds had not been delivered nor the mortgages executed for the balance as required by the purchase agreement. This

---

[18] *Bothwell* v. *Bingham County*, 237 U. S. 642, 647.

[19] *Elder* v. *Wood*, 208 U. S. 226.

[20] But see *ABR Corp.* v. *Newark*, 133 N. J. L. 34.

Court said: "In equity the situation was then the same as if the Corporation had conveyed title to the purchasers, as owners, and they had mortgaged the lots to the Corporation to secure the unpaid purchase money." Page 555. The Court sustained the tax subject to the paramount lien of the United States. We think the petitioner's Minnesota property is in a similar position. Ownership of the beneficial interest has passed to the petitioner with legal title retained by the United States for security purposes. This should not put this private property in an exempt class.

There is a suggestion that to hold United States property subject to state taxation pending the completion of payment will injuriously affect its salability and therefore interfere with the Government's handling of its affairs. Our recent cases have disposed of this economic argument in a way which is contrary to petitioner's contention. *Alabama* v. *King & Boozer,* 314 U. S. 1, and cases cited.

The only other contention of petitioner which we need mention is that the State has included the interest of the United States in the valuation of the land, and has therefore subjected that interest to taxation. But no deduction need be made for the interest of the Government since that interest is for security purposes only and is not beneficial in nature. The whole equitable ownership is in the petitioner and the value of that ownership may be ascertained on the basis of the full value of the land. *New Brunswick* v. *United States, supra,* at 555–56.

*Affirmed.*

MR. JUSTICE JACKSON took no part in the consideration or decision of these cases.

MR. CHIEF JUSTICE STONE, with whom MR. JUSTICE FRANKFURTER joins, concurring.

I concur in the result, but I do not join in so much of the opinion of the Court as undertakes to discuss the ter-

ritorial jurisdiction of the State of Minnesota over the land in question. The territorial jurisdiction of the state to lay the tax, said to be a novel question, was not raised in the state courts, by the petition for certiorari, or in argument or briefs in this Court. Under our decisions we are therefore not free to decide it. *McGoldrick* v. *Compagnie Generale,* 309 U. S. 430, 434–5; *Wilson* v. *Cook,* 327 U. S. 474, 483–484, and cases cited; see also Rule 38, par. 2 of the Rules of this Court; *Flournoy* v. *Wiener,* 321 U. S. 253, 259. Since the opinion of the Court expresses no disapproval of these authorities, I take it that everything said on the question of Minnesota's territorial jurisdiction to tax is dictum. Our opinion should be confined to the single question which the petitioner presents for our decision, whether the retention by the United States of the legal title to the taxed land precludes its taxation to petitioner, which, under its contract with the Government, has acquired possession and right to possession. As I have no doubt on this question, I agree the judgments should be affirmed.

MR. JUSTICE FRANKFURTER, concurring.

The Government sold a piece of surplus property located in St. Paul, Minnesota. It put the vendee in possession but retained the legal title, with the right of re-entry, as security for portions of the purchase price remaining due under the contract of sale. The decisive question before us is whether the interest thus retained by the United States bars Minnesota, under a general non-discriminatory law, from taxing the vendee's interest in the property. The Constitution itself furnishes no answer in terms. But the considerations governing the appropriate adjustment between national and state powers of taxation, where the incidence of taxation may affect the property or functions of one another, do not require that entire immunity from state taxation be afforded this piece of property because

of the interest which the United States retained to secure the unpaid purchase price. Since the Government's security is left untouched by Minnesota, what remains of the Government's relation to the property is too attenuated to withdraw it entirely from Minnesota's taxing power.

The matter would hardly be open to question but for a series of cases arising under land grant legislation. As the opinion of the Court persuasively shows, these decisions rest upon considerations of policy not relevant to the immediate situation.

I agree with the Chief Justice that our disposition of this case should be confined to the only question raised by the record, that of the State's power to tax, unembarrassed by any issue as to territorial jurisdiction. The Chief Justice gives conclusive ground for such abstention. Moreover, even as to property indisputably owned by the Government, there may be "uncertainty and confusion" whether jurisdiction belongs to the Federal Government or to a State. See *Bowen* v. *Johnston,* 306 U. S. 19, 27; and *Pacific Coast Dairy* v. *Dept.,* 318 U. S. 285, 299. Taxability and territorial jurisdiction are not correlative. We ought not to borrow trouble.