O'BRIEN, TREAS., APPELLANT, *v.* GIVENS ET AL., APPELLEES.

(No. 7516—Decided February 11, 1952.)

*Mr. C. Watson Hover, Mr. William J. Schmid* and *Mr. Francis X. Schwegmann,* for appellant.
*Mr. Cedric Vogel,* for appellee Clifford E. Givens.

MATTHEWS, J. This is an action in which the treasurer of Hamilton county seeks to subject the rents and

other income from certain real estate to the payment of delinquent taxes assessed against such real estate. The action was filed under favor of Section 5703, General Code, which provides that a county treasurer may institute an action to have himself ex officio appointed receiver to collect and apply the rents, issues, and income to the payment of the delinquent taxes on such real estate. The trial court found in favor of the defendants and this appeal is from that judgment.

The judgment of the trial court was based on a finding that the tax levy was invalid and that is the only question presented on this appeal.

The assessments involved were levied for the years 1927 to 1950, both inclusive, and aggregate $12,715.26.

At the time of her death in 1921, this real estate was owned in fee simple by Marian C. Reed. By her will, she devised this real estate to the defendant Clifford E. Givens for his life and after his death to the Treasurer of the United States to be by him added to the fund for the extinguishment of the debt created by the first World War. There has been no change in the title since the death of Marian C. Reed. At the time of her death, the property was listed in her name on the tax duplicate, and still is.

The United States government is not a party to this action, and, of course, would not, in any event, be prejudiced by any action of the court in subjecting the income of the life tenant to the payment of this tax charge. However, the sovereign rights of the United States are involved in the defense relied upon by Clifford E. Givens. That defense is that it is beyond the constitutional power of the state of Ohio to impose a tax upon this real estate, of which the United States is the owner in fee, subject to defendant Givens' life estate; that to subject the rents, issues, and income through a receivership would force him to pay a tax which the state of Ohio had no power to levy, and

could not enforce against the United States; and that to require him to pay a tax based on a valuation of the entire fee would be taking his property without regard to the due process and equal protection provisions of the Constitution.

That property of the United States is exempt by the Constitution of the United States from taxation under the authority of a state is clear. Land owned by the United States, although within the territorial limits of a state, is in the national domain and cannot be reached by the state taxing power. *Van Brocklin* v. *State of Tennessee,* 117 U. S., 151, 29 L. Ed., 845, 6 S. Ct., 670. There is a host of decisions to the same effect. The principle is settled beyond cavil. The only difficulty arises when the title of the United States in the same subject matter becomes commingled with that of private persons. That difficulty is not in deciding that the title of the United States is exempt, but in determining to what extent the presence of the title of the United States affects the undoubted power of the state to tax the privately owned property within its borders. Failure of the state administrative officers to collect a tax may and has resulted from the inadequacy of the state legislation under which they are acting to separate the privately owned taxable title from the nontaxable title of the United States. This was the basis of the decision in *Pacific Spruce Corporation* v. *Lincoln County,* 21 F. (2d), 586. In that case, the taxing authority of the state of Oregon attempted to make a levy under a statute defining land as the subject of taxation as ''the terms land, real estate and real property, as used in this act, shall be construed to include the land itself; * * * also any estate, right, title or interest whatever in land or real property, less than the fee simple.'' Another section from taxation. It was held that this section limited expressly exempted all property of the United States

the power to tax to the legal title alone, and, therefore, a tax purporting to be levied upon the equitable title to land of which the legal title rested in the United States as security for the unpaid balance of the purchase price was unenforceable. It is apparent that the tax failed, not because the private interest in the land was beyond the power of the state, but because the state had not exercised the power.

So, in *S. R. A., Inc.,* v. *Minnesota,* 327 U. S., 558, 90 L. Ed., 851, 66 S. Ct., 749, in which the state of Minnesota carefully guarded the title of the United States in the land, the court sustained the power of the state to tax the privately owned equitable title, notwithstanding the United States held the legal title as security for the unpaid balance of the purchase price. As stated in the first paragraph of the syllabus, the court held that ''under the state law, as construed by the Supreme Court of the state, the equitable interest alone could be sold for taxes, leaving the fee of the United States in its position of priority over any interests which might be transferred by the tax sale.''

At page 561, the court said:

''The supremacy of the Federal Government in our Union forbids the acknowledgement of the power of any state to tax property of the United States against its will. Under an implied Constitutional immunity, its property and operations must be exempt from state control in tax, as in other matters.''

And, at page 570, the court said:

''The only other contention of petitioner which we need mention is that the state has included the interest of the United States in the valuation of the land, and has therefore subjected that interest to taxation. But no deduction need be made for the interest of the government since that interest is for security purposes

only and is not beneficial in nature. The whole equitable ownership is in the petitioner and the value of that ownership may be ascertained on the basis of the full value of the land.''

It should be noted here that the defendant Givens has not and never had the whole title—equitable or legal—or both. All he ever had was a life estate in the legal title. The United States owned and owns the remainder in fee. The equitable title was never at any time separated from the legal title.

In his concurring opinion in the *S. R. A., Inc., case,* Justice Frankfurter said at page 571:

''The decisive question before us is whether the interest [the legal title] thus retained by the United States bars Minnesota, under a general nondiscriminatory law, from taxing the vendee's interest in the property.'' He proceeded to answer the question in the negative.

There has been no conflict between Ohio and federal rulings on this precise question. While Section 5351, General Code, recognizes the exemption of property of the United States from state taxes, the Ohio cases also recognize that this exemption is limited to protecting the United States from burdens attempted to be imposed upon it by the state, and does not preclude a levy upon the interest of a privately owned title in the same property. *United States* v. *Board of Tax Appeals,* 145 Ohio St., 257, 61 N. E. (2d), 481; *Dunn, Aud.,* v. *Board of Tax Appeals,* 154 Ohio St., 42, 93 N. E. (2d), 278.

It is thus seen that the mere fact that the privately owned title is related to a title owned by the United States is not sufficient in and of itself to withdraw it from the taxing power of the state under the federal Constitution. If it leaves the title of the United States undisturbed, casts no burden upon it, and does not

interfere with its declared policy, the state action cannot be successfully assailed as an invasion of the national domain.

We conclude, therefore, that the state of Ohio had the constitutional power to tax the life estate of the defendant Givens, but had no power to tax the fee simple remainder owned by the United States. Of course, in exercising the power to tax the life estate, Ohio must conform to the constitutional provisions of due process and equal protection. We look then to the Ohio statutes to determine whether they impose a tax upon this life estate.

Prior to the amendment of Section 2658, General Code, in 1931, it had long been questioned whether a personal judgment against the owner of real estate was authorized by the statutes of Ohio. With the possible exception of a short period from April 16, 1874, to April 8, 1876, it is probable that the law did not authorize a personal judgment. Certainly, no clear pronouncement necessary to a decision was made to that effect by the Supreme Court. The statutes clearly authorized a personal judgment against the owner for taxes on personal property which he had returned for taxation, or taxes shown by a force return. Some of these statutes were so worded as to raise some question as to whether they applied to both personal and real property taxes, but by the amendment to Section 2658 and other sections of the General Code, in 1931, it was made clear that the provisions for the enforcement of the payment of personal property taxes by personal judgment were not available to enforce the payment of a tax levy upon real estate. 6 University of Cincinnati Law Review, 251; *Newman* v. *Newman Mfg. Co.*, 31 N. P. (N. S.), 273; and *In Re Estate of Kastilic,* 19 Ohio Law Abs., 109, 2 Ohio Supp., 297.

The difficulty with which the plaintiff in this case is

confronted is not the lack of power to tax the defendant Givens' life estate, but the failure of the state to exercise its undoubted power to do so. It has taxed the "land" or "real property" which by statutory definition (Section 5322, General Code) are synonymous, and include not only the physical thing but also all rights and privileges appertaining thereto. The levy is against the entire bundle of privileges or rights regardless of the owner. There is no attempt to·disentangle the title and make separate levies based on ownership thus disclosed. While Section 5680, General Code, makes it the duty of a life tenant, as between him and the remainderman, to pay the tax, it does not impose a duty upon him as to the state. We have been cited to no case and have found none in which the Supreme Court in an action by the state has held that a life tenant was obliged to the state to pay the taxes assessed against the land in which the life estate existed. *Crockett* v. *Crockett*, 2 Ohio St., 181, in which it was held that a life tenant could cut timber to obtain money with which to pay taxes without being charged with committing waste, was an action between the owner of the fee and the life tenant. Whether the life tenant could recover the amount of the taxes was not raised.

Nor have we been cited to a statute or decision authorizing a separate listing and valuation of a life estate or other partial title by the taxing authorities. On first impression, *Cincinnati College* v. *Yeatman, Aud.*, 30 Ohio St., 276, would appear to be such decision. When analyzed, the impression is dispelled. The facts were unusual. The Mercantile Library Association owned a perpetual leasehold (which for most purposes including taxation was and is equivalent to a fee simple in Ohio) on the second story of the Cincinnati College Building. The Cincinnati College

owned the rest of the building. All the court actually held was that these were separate pieces of real property and should be listed and taxed separately.

It was said in the first paragraph of the syllabus:

"There may be several and distinct tenements in the same building, under the same roof, as well where one is *over* the other, as where one is *beside* the other."

So we conclude that in Ohio land taxes are levied against the land itself, without taking into account the ownership thereof other than to determine its taxability, and that no personal obligation to pay to the state is imposed upon any one because of such ownership. The mere imposition of the tax creates no personal obligation.

In this case there has been no attempt to separately list and value the defendant Givens' life estate. Indeed, during all these years this land has been listed in the name of Marian C. Reed, the former owner, for its entire tax value.

To so construe and apply Section 5703, General Code, as to authorize the appropriation of the rents and profits of this real estate to the payment of these taxes would be to authorize the doing by indirection that which has not been authorized by direct action. It would authorize the appropriation of the defendant Givens' property, the rents, etc., to the payment of the taxes, when no authority to do so had been conferred. It would require the defendant Givens to pay taxes upon property he did not own, and without recourse for reimbursement, which certainly would lack due process of law. It would also be a tax upon the property of the United States, which, as already observed, is entirely exempt from state taxation.

A case bearing resemblance to the case at bar is that of *Mehne, Treas., v. Dillon*, 203 Ind., 346, 165 N. E., 908. Under statutes very similar to ours, Indiana attempted to compel a life tenant to pay a tax upon the

entire value of land, the ownership of the fee being in a charitable institution which was exempt from taxation. The court held, as stated in the second paragraph of the syllabus, that "Though a tenant for life owes it to the remainderman to keep down the taxes, that alone does not require the life tenant to pay taxes on the fee of the land when such fee is exempt from taxation because the net profits from the real estate have been bequeathed to a church for educational and charitable purposes, as the life tenant's obligation to pay taxes is to the remainderman and to no other person or entity."

For these reasons, the judgment of the Court of Common Pleas is affirmed.

*Judgment affirmed.*

HILDEBRANT, P. J., MATTHEWS and Ross, JJ., concur in the syllabus, opinion and judgment.