Philip KRUPP et al., Plaintiffs,
Appellants,

v.

FEDERAL HOUSING ADMINISTRA-
TION, Defendant, Appellee.

No. 5732.

United States Court of Appeals
First Circuit.

Jan. 16, 1961.

George H. Foley, Boston, Mass., with
whom Blair L. Perry and Hale & Dorr,
Boston, Mass., were on brief, for appel-
lants.

James W. Noonan, Asst. U. S. Atty.,
Boston, Mass., with whom Elliot L. Rich-
ardson, U. S. Atty., Boston, Mass., was
on brief, for appellee.

Before WOODBURY, Chief Judge, and
HARTIGAN and ALDRICH, Circuit
Judges.

ALDRICH, Circuit Judge.

In several national publications in
June 1957 the defendant-appellee, the
Federal Housing Administration, adver-
tised for sale a garden-type apartment
project called Gateway Apartments locat-
ed in Springfield, Massachusetts. The
so-called "Prospectus and Request for
Offers" contained information as to the
number of units and garages, rental
rates, percentage of apartment occupan-
cy, and expenses. In particular it stated
that the property included 100 garages,
and gave the going rent as four dollars
per unit. Plaintiff-appellant Krupp, in

response to the prospectus, and after inspecting the property, submitted a bid. The bid was accepted and the property acquired by the second plaintiff, Krupp's nominee. Plaintiffs thereafter sued for breach of warranty and for deceit on the basis of the prospectus and the contract, in which the prospectus was incorporated. The defendant filed a motion for summary judgment with an accompanying affidavit. Plaintiffs filed an affidavit in opposition. The defendant's motion was granted and plaintiffs appeal.

The so-called garages were in fact groups of carports with continuous roofs. Each roof was supported at intervals by walls or by lally columns. Between each set of supports there were two numbers, indicating a double stall.[1] In point of fact, dual occupancy by standard-sized cars resulted in so close a fit that none of the doors of either car could be opened. The defendant concedes that from a practical standpoint there were only one-half as many rentable garages as was stated. Plaintiffs deny that they knew this fact until title had passed, and claim that they were misled to their damage.

The issue was well summarized by the district court. "[Plaintiffs] say that they contracted to buy 192 apartments and 100 garages and actually received 192 apartments and 50 garages. However, plaintiffs did not contract to buy 192 apartments and 100 garages as such. They agreed to buy a specific piece of real estate, the Gateway Apartments, as a single unit. This specific piece of property is exactly what was conveyed. They received the exact physical property they agreed to buy. If they were misled by their reliance on any statement of FHA as to the number of garage units it contained, this is the risk which they knew or should have known they were taking because the prospectus clearly warned them that the sale was being made in those terms."

■■■ In this suit brought against an agency of the federal government the court correctly ruled that federal law governed. See S. R. A., Inc. v. State of Minnesota, 1946, 327 U.S. 558, 564, 66 S.Ct. 749, 90 L.Ed. 851; Clearfield Trust Co. v. United States, 1943, 318 U.S. 363, 366, 63 S.Ct. 573, 87 L.Ed. 838; New York, N. H. & H. R. R. v. Reconstruction Finance Corp., 2 Cir., 1950, 180 F.2d 241, 244 & note 4. Moreover, this is not one of those cases in which it seems appropriate to draw on local law, as the advantages of uniformity in determining the Administrator's liability resulting from the disposition of property on a nation-wide scale are apparent. See Clearfield Trust Co. v. United States, supra, 318 U.S. at page 367, 63 S.Ct. at page 575. But we do not think it follows, as the court concluded and defendant maintains here, that the contract must be read strictly in favor of the FHA. On the contrary, the government's contractual liability must be decided in the same manner as that of a private party in the same circumstances. S. R. A., Inc. v. State of Minnesota, supra, 327 U.S. at page 564, 66 S.Ct. at page 753; United States v. Utah, etc., Stage Co., 1905, 199 U.S. 414, 423, 26 S.Ct. 69, 50 L.Ed. 251; Cooke v. United States, 1875, 91 U.S. 389, 396, 23 L.Ed. 237; The Century Indemnity Co. v. United States, 1956, 99 U.S.App.D.C. 19, 236 F.2d 752, 756; cf. Clearfield Trust Co. v. United States, supra, 318 U.S. at page 369, 63 S.Ct. at page 576.

The first question is whether the statement that there were 100 garages was, standing alone, a representation in the nature of a warranty, or a mere estimate. The defendant cites authority to the effect that descriptions of quantity, particularly in government "surplus sales," are understood as only the latter. Maguire & Co. v. United States, 1927, 273 U.S. 67, 47 S.Ct. 274, 71 L.Ed. 540; Lipshitz & Cohen v. United States, 1925, 269 U.S. 90, 46 S.Ct. 45, 70 L.Ed. 175. We doubt whether the sale of a single piece of real estate by the FHA, whose regular business must necessarily include disposing

[1.] Apparently the numbers ran 1–96, or 1–98, rather than 1–100, but this relatively minor discrepancy is of no present moment.

of property, is in the category of a surplus sale. But, more important, the proper test is not surplus versus some other kind of sale, but the more general one of how it is reasonable, under all of the circumstances, to understand what is, arguably, an affirmation of fact. While the nature of the sale is no doubt included among the relevant factors, so also are the definiteness of the language used and the apparent ability, or inability, of the seller to ascertain the actual facts. There is a wide, obvious difference, for example, between the government's statement of the "approximate" total weight of surplus junk metal located at a number of forts (Lipshitz & Cohen v. United States, supra), and the flat statement that a certain structure has rentable garage space for 100 cars. We cannot regard the latter on its face as anything but a positive statement of known fact.[2]

■■■■ The government points out that the prospectus (and agreement of sale) provided, "Those interested are expected to acquaint themselves with the property and to develop their own expectations as to rental income, operating expenses, etc." In borderline cases an invitation to inspect may be one of the material considerations in deciding whether a particular statement was an affirmation of fact or only an estimate. See Maguire & Co. v. United States, supra; 1 Williston Sales, § 208 (rev. ed. 1948). But where the nature of the statement is clear, such invitation does not relieve the defendant. In United States v. Utah,

etc., Stage Co., supra, 199 U.S. at pages 424–425, 26 S.Ct. at page 73, the court said,

"[T]he government, in its advertisement, had positively stated the number of stations at two. The contractor had a right to presume that the government knew how many stations were to be served; it was a fact peculiarly within the knowledge of the government agents, and upon which, in the advertisement, it spoke with certainty. We do not think, when the statement was thus unequivocal, and the document was prepared for the guidance of bidders for government service, that the general statement that the contractor must investigate for himself, and of non-responsibility for mistakes, would require an independent investigation of a fact which the government had left in no doubt."

See also Hollerbach v. United States, 1914, 233 U.S. 165, 34 S.Ct. 553, 58 L.Ed. 898.[3] The present case falls in this category.

There remain certain express disclaimer provisions, immediately preceding the invitation to inspect just quoted. "The purchaser will be expected to accept the property in its present condition without warranty by FHA as to physical condition. * * * Information provided herein is all to be made available by FHA and is furnished without responsibility on the part of FHA." This language, also, was carried over into the contract of

2. Were it only an estimate, the cases indicate that even estimates must be made in good faith. See, e. g., Lipshitz & Cohen v. United States, supra, 269 U.S. at page 92, 46 S.Ct. at page 46; United States v. Silverton, 1 Cir., 1952, 200 F. 2d 824, 828. Having in mind that this is a motion for summary judgment, on this record we could not say the government was unaware of the usable number.

3. A plaintiff may not assert such a breach of warranty when he was aware of the true facts from the beginning. See Mottram v. United States, 1926, 271 U.S. 15, 46 S.Ct. 386, 70 L.Ed. 803; Anthony M. Meyerstein, Inc. v. United States, 1956,

137 F.Supp. 427, 431, 133 Ct.Cl. 694. It may be that in the proper circumstances a plaintiff will also be charged with knowledge of facts which an investigation would or should have disclosed. See Mottram v. United States, supra; cf. Shappirio v. Goldberg, 1904, 192 U.S. 232, 241, 24 S.Ct. 259, 48 L. Ed. 419; Mabardy v. McHugh, 1909, 202 Mass. 148, 151, 88 N.E. 894, 23 L.R.A., N.S., 487. But cf. Yorke v. Taylor, 1955, 332 Mass. 368, 372–374, 124 N.E.2d 912. However, on the present record we cannot rule as matter of law that plaintiffs knew, or must be taken as knowing, that the width of these carports was inadequate.

purchase. Having in mind that these provisions are to be construed against the defendant which drafted them, see, e. g., Reconstruction Finance Corp. v. Sullivan Mining Co., 9 Cir., 1956, 230 F.2d 247, 250, and having also in mind that all provisions in an agreement, including disclaimers, are to be limited or construed, if possible, to avoid conflict with other provisions, see, e. g., Fairbanks, Morse & Co. v. Consolidated Fisheries Co., 3 Cir., 1951, 190 F.2d 817, 821–822, we do not believe that the disclaimers go far enough. The excluded "warranty * * * as to physical condition" in its more natural sense means a warranty as to state of repair, or condition at the moment. Complete non-existence is a difference in kind, not in degree, and is not within this phraseology. Again, the provision that information "is all to be made available by FHA and is furnished without responsibility on the part of FHA,"[4] followed by a caution that bidders are to develop their own expectations, seems more naturally to be addressed to additional information which would be useful in predicting the earning potential of the property. Stronger language—and cases cited by defendant show that such is easily devised—, or strong circumstances, are required to strike from consideration and render meaningless the fundamental, basic description of the property.

■ The district court appeared to have some feeling that disclaimer provisions in a government contract were to be more favorably construed because "imposed to protect the public treasury." When the government goes into the market place it must go as everyone else. The public treasury may be protected by conditions imposed by Congress, or by lawful regulations, Federal Crop Ins. Corp. v. Merrill, 1947, 332 U.S. 380, 385, 68 S.Ct. 1, 92 L.Ed. 10, but if the matter is left to contractual provisions and to the courts, all parties there must stand alike. We cannot recognize one rule for

the government, and another for private litigants. Cases supra.

It is unnecessary to consider the plaintiffs' claim for deceit, or the government's special defenses thereto.

Judgment will be entered vacating the judgment of the District Court and remanding the case for further proceedings not inconsistent herewith. Appellants' motion for costs is denied. Ewing v. Gardner, 1951, 341 U.S. 321, 71 S.Ct. 684, 95 L.Ed. 968.

---

4. The defendant emphasizes the previous word "herein," (see *supra*). This clause is badly drawn and points in two directions. It is not for defendant to select which it likes better.