AMERICAN TRUST COMPANY, Respondent, *v.* RECONSTRUCTION FINANCE CORPORATION et al., Appellants.

First Department, February 21, 1963.

148

*John Paul Reiner* of counsel (*Arthur S. Olick* and *Charles R. L. Hemmersley* with him on the brief; *Vincent L. Broderick, United States Attorney for the Southern District of New York*), for appellants.

*Monroe Collenburg* of counsel (*Timothy P. Walsh* with him on the brief; *Hardin, Hess & Eder*, attorneys), for respondent.

Noonan, J.   The defendants appeal from a judgment in the amount of $52,202.05 entered on the 14th day of October, 1960 in favor of the plaintiff.

The plaintiff, then known as the Pan American Trust Co., entered into a Blanket Participation Agreement, referred to as a "BPA Agreement", with the Reconstruction Finance Corporation dated May 10, 1945, which by its terms permitted the plaintiff to enter into loans generally for a limited amount upon compliance with the terms and conditions of the agreement and without the necessity of advance approval from Reconstruction Finance Corp.   Likewise, by its terms the "BPA Agreement" permitted these loans only until January 22, 1947.   On January 14, 1947 the plaintiff granted a loan to St. George Recording Equipment Corporation in the amount of $100,000.   This loan was secured by a chattel mortgage dated January 15, 1947 upon the machinery and equipment of the borrower which had an appraised value in excess of the amount of the loan.

Some time in October or November, 1947 the stock of St. George was sold to new interests and on October 23, 1947 the corporate name was changed from St. George Recording Equipment Corporation to Wire Recording Corporation of America. On November 7, 1947 the plaintiff applied for an agreement with the Reconstruction Finance Corporation for a new loan for Wire Recording.   At this time $44,000 had been paid on the original loan leaving a remaining balance of $56,000.   The application made by the plaintiff on that date was for a Small Loan Deferred Participation Agreement referred to as "SLP Agreement".

On November 19, 1947 the Reconstruction Finance Corporation accepted the plaintiff's application for the "SLP Agreement" on certain terms and conditions, which among others, included that the bank plaintiff, prior to the disbursement of any funds, should procure a chattel mortgage to cover all of the borrower's machinery and equipment, furniture and fixtures, tools, dies, jigs and molds and also required the bank plaintiff to procure additional collateral in the form of a real estate mortgage.

At that time the Reconstruction Finance Corporation also submitted for execution by the plaintiff the "SLP Agreement". On November 26, 1947 the plaintiff took a note from Wire Recording in the amount of $100,000 and disbursed the funds to that corporation by applying $56,000 to the remaining series of unpaid notes under the "BPA Agreement" and turning over to Wire Recording $44,000 for working capital. The "SLP Agreement" was dated December 2, 1947. The reason for the delay in the signing of that agreement was because of the change of the name from St. George to Wire Recording which was not reflected in the plaintiff's original application. A chattel mortgage covering only the tools, dies, jigs and molds of Wire Recording was not procured by the plaintiff until December 22, 1947. Through some mistake of the plaintiff, this chattel mortgage did not include the borrower's machinery, equipment, furniture and fixtures owned at that time. In collateral litigation the plaintiff procured a determination in the Federal courts that the original chattel mortgage of January 15, 1947 was still in force and effect as against the trustee in bankruptcy of Wire Recording. Wire Recording filed a voluntary petition for a creditor arrangement under the Bankruptcy Act on December 9, 1948 and on February 10, 1949 was adjudicated a bankrupt. The mortgage on real property required by the conditions of the acceptance as additional collateral was also dated December 22, 1947, a date subsequent to the first disbursement.

Likewise, the chattel mortgage and the schedule of items attached thereto, fell short of the requirement in the "SLP Agreement", both as to scope and time of filing. In addition, by the terms of the "SLP Agreement" the plaintiff was required to obtain opinion of counsel under Paragraph 8 Subdivision "C" and this likewise and concededly was not done.

The "SLP Agreement" also required that upon the maturity of the loan, which occurred when the voluntary petition for an arrangement was filed on December 9, 1948, the plaintiff serve a written demand upon the Reconstruction Finance Corporation to purchase and participate to the extent of 75% of the loan as provided in the agreement. Concededly no formal written

demand to purchase or participate was ever made by the plaintiff on the defendant.

On these facts the trial court concluded that the defendants' liability was rooted in the " BPA Agreement " and that the loan to Wire Recording under the " SLP Agreement " was not a new loan but a refinancing of the old one made to Wire Recording's predecessor. This was error.

The loan to Wire was made not only after the change in the corporate name but also after new interests entered into the enterprise.

In addition, the documentary evidence points to the fact that the old loan was considered paid and that transaction closed.

Thus, the parties clearly manifested an intention that the new loan and the agreement (SLP) should supersede the prior transaction (*Blair & Co.* v. *Otto,* 5 A D 2d 276; *Moers* v. *Moers,* 229 N. Y. 294).

It follows, therefore, that the rights and obligations of the parties must be determined on the basis of the " SLP Agreement ".

As heretofore indicated that agreement required plaintiff to comply with certain terms. (Mortgages to be obtained from the borrower, advice of counsel and written notice of the demand for participation.)

Since the defendants are Federal agencies, it is Federal law that applies in construing the agreement out of which this controversy arises. (*Krupp* v. *Federal Housing Administration,* 285 F. 2d 833, 834.)

Under that law the terms contained in RFC contracts are considered conditions precedent (*Oklahoma Nat. Bank* v. *Reconstruction Finance Corp.,* 127 F. Supp. 156; *First Nat. Bank of San Mateo County* v. *Reconstruction Finance Corp.,* 123 F. Supp. 620; *Central Nat. Bank in Chicago* v. *Reconstruction Finance Corp.,* 134 F. Supp. 873).

Whether the contract at issue is considered as one of surety or one of participation, pure and simple, plaintiff had the burden of proving that it complied with the conditions precedent before the contract could be enforced in its favor.

As was said in *Jungmann & Co.* v. *Atterbury Bros.* (249 N. Y. 119, 122): " The plaintiff may not recover upon its contract without proof that it has performed all conditions precedent required of it."

The evidence clearly established that plaintiff failed to prove compliance with the conditions precedent contained in the " SLP Agreement " in respect of the mortgages, advice of counsel and the written demand for defendants' participation.

For these reasons the judgment should be reversed, on the law and the facts, with costs, and the complaint dismissed. The court does not reach the question of the propriety of the interest charge to defendants as governmental agencies. Settle order.

BREITEL, J. P., RABIN, VALENTE and STEVENS, JJ., concur.

Judgment unanimously reversed, on the law and on the facts, with costs to appellants, and the complaint dismissed. Settle order on notice.