**Paul VARKELL and Hyman Nutkis, a Partnership, T/A Pavcor Company**

**v.**

**The UNITED STATES.**

**No. 186–63.**

United States Court of Claims.
July 17, 1964.
Rehearing Denied Oct. 16, 1964.

654

Hyman J. Cohen, Washington, D. C., for plaintiffs.

Manfred J. Schmidt, Washington, D. C., with whom was Asst. Atty. Gen. John W. Douglas, for defendant.

Before JONES, Senior Judge, and WHITAKER, LARAMORE, DURFEE and DAVIS, Judges.

PER CURIAM.

Defendant offered for sale in California, as surplus property, and plaintiffs agreed to buy (among other things), some film described as follows:

"FILM: Kodak Linograph Shellburst, safety film, clear base. Exposure Index 25, 35 MM, 400 Ft. Expiration date May 1957. Est. 322 Rolls.

"Est. Acquisition Cost: $1,384.60 Apparently Unused—Fair"

The price bid for this item was $927.36.

The contract of sale included the following provisions:

"1. INSPECTION.[1] Bidders are invited and urged to inspect the property to be sold prior to submitting bids. Property will be available for inspection at the places and times specified in the invitation. The Government will not be obliged to furnish any labor for such purpose. In no case will failure to inspect constitute grounds for a claim or for the withdrawal of a bid after opening.

"2. CONDITION OF PROPERTY.— All property listed herein is offered for sale 'as is' and 'where is', and without recourse against the Government. If it is provided herein that the Government shall load, then 'where is' means f.o.b. conveyance at the point specified in the Invitation. The description is based on the best available information, but the Government makes no guaranty, warranty, or representation, expressed or implied, as to quantity, kind, character, quality, weight, size, or description of any of the property, or the fitness for any use or purpose, and no claim will be considered for allowance or adjustment or for rescission of the sale based upon failure of the property to correspond with the standard expected; this is not a sale by sample."

In addition, on each page describing the property offered for sale there appeared the legend: "CAUTION: INSPECT THE PROPERTY." Plaintiffs, a New York firm, did not inspect the property or arrange for its inspection.

On delivery of the purchased film to plaintiffs' place of business in New York, it was discovered that the shipment contained 322 rolls of film but that each roll contained film 100 feet long, rather than 400 feet in length. Asserting that 100-foot rolls were useless to it, plaintiffs sought a refund. The contracting officials refused this demand and the Armed Services Board of Contract Appeals affirmed. This suit for $927.36 then followed.

Under a long line of our decisions, plaintiffs have no case. See, e.g., Alloys & Chems. Corp. v. United States, Ct.Cl. No. 8–62, decided Nov. 15, 1963, 324 F.2d 509; American Auto Parts Co., Inc. v. United States, Ct.Cl., No. 120–57, decided June 7, 1963; Montreal Securities, Inc. v. United States, Ct.Cl., No. 241–62, decided Mar. 13, 1964, 329 F.2d 956, and cases cited. This was an

---

1. Another provision of the invitation for bids stated the time and place for inspection of the property.

"as is" sale of surplus property, in which prospective purchasers were explicitly warned to inspect the goods. Not only was this direction embodied in a standard article entitled "Inspection," but each page describing the items carried the explicit warning "Caution: Inspect the Property." Furthermore, the contractual article on "Condition of Property" provided that in this "as is" sale "the Government makes no guaranty, warranty, or representation, expressed or implied, as to quantity, kind, character, quality, weight, size, or description of any of the property, or the fitness for any use or purpose," and that no claim would be considered if it was "based upon failure of the property to correspond with the standard expected." Under these and similar provisions, many other purchasers of surplus property have been held to their bargains, even though the goods turned out to be different in characteristics from those advertised or described by the Government. In such sales the risk is on the purchaser. Plaintiffs, in New York, could have arranged for an agent in California to inspect the property, or they could have taken account, in their bid, of possible deviations from the description. As in our prior decisions, there is no reason to ignore the explicit provisions of the sale.

Plaintiffs bought 322 rolls of film and they received 322 rolls of film [2] ; "this is not a case of ordering apples and getting oranges" (United States v. Silverton, 200 F.2d 824, 828 (C.A. 1, 1952); Standard Magnesium Corp. v. United States, 241 F.2d 677, 679 (C.A. 10, 1957) ). Krupp v. Federal Housing Administration, 285 F.2d 833 (C.A. 1, 1961), holding the Government liable for a positive misstatement in an offer of sale, is inapplicable because that contract did not contain the all-inclusive disclaimers of the present contract.

The defendant's motion for summary judgment is granted, the plaintiffs' cross-motion is denied, and the petition is dismissed.

JONES, Senior Judge (dissenting):

It is true this is an "as is, where is" contract, but its provisions are entirely different from any contract heretofore presented to the court.

The "as is, where is" clause in the instant contract is found in the printed provisions under the heading—

"GENERAL SALE TERMS AND CONDITIONS."

Immediately following these provisions are some typewritten special provisions headed—

"ADDITIONAL PROVISIONS."

I quote the following paragraph from the first page of these typed provisions of the contract:

"20. ADJUSTMENT FOR VARIATION IN QUANTITY: Any variation between the quantity or weight listed for any item and the quantity or weight of such item tendered or delivered to the Purchaser will be adjusted on the basis of the unit price quoted for such items; but no adjustment for such variation will be made where an award is made on a 'price for the lot' basis. When property is sold on a unit price basis, the Government reserves the right to vary the quantity tendered or delivered to the Purchaser by 10%. If the Government tenders or delivers a quantity up to 10% in excess of that stated in the Invitation to Bid, the Purchaser agrees to accept such quantity and pay the Government therefor at the unit price set forth in this contract. If the Government tenders or delivers a quantity less than that stated in

---

2. The adjustment provided in the contract article entitled "Adjustment for Variation in Quantity" applied only to the number of *units* received, *i.e.*, the number of *rolls*, not to the characteristics of the individual rolls. The unit here was the roll. The plaintiffs received the full number of rolls ordered and the adjustment article was therefore inapplicable.

the Invitation to Bid, the Purchaser agrees to accept the quantity tendered or delivered unless the variation exceeds 10% of the quantity stated in the Invitation to bid. *In such event of a shortage, the Government will refund the Purchaser the difference between the quantity paid for and the quantity delivered, calculated upon the basis of the unit price set forth in this contract."* [Emphasis supplied.].

It is hornbook law that a special provision controls a general, if in the same contract. This provision for adjustment clearly applies since the property was sold on a unit price basis, as will be seen from this quotation which is included in both the invitation to bid and the contract:

| Item No. | Description and Location of Property | Quantity (Number of Units) | Unit of Measure | To Be Supplied by Bidder | | |
|---|---|---|---|---|---|---|
| | | | | Price Bid Per Unit | Total Price Bid | |
| | | | | | Dollars | Cents |
| • • | • • • • • | • • • | • | • • • | • | • |
| 12. NSA E | FILM: Kodak Linograph Shellburst safety film, clear base. Exposure Index 25, 35 MM, 400 ft. Expiration date May 1957. Est. 322 Rolls. | 322 Price per: | Rolls $ | 2.88 Roll | $ 927. Total | 36 |

Thus, it will be seen that this was a unit price contract with a specified unit price. Under the provisions of paragraph 20, quoted above, it was stipulated that if there was a variation of more than 10 percent in quantity there should be an adjustment.

There is no possible justification for saying that the specific exception as to quantity applies only to the number of rolls. It definitely applies to the quantity shipped. Provision No. 20 quoted above is definitely not limited to the number of rolls. It applies to quantity in any form without any limitation whatever. The signed contract called for the shipment of 128,800 feet of film. The quantity actually shipped was 32,200 feet of film. If this does not constitute more than 10 percent variation in the quantity shipped then I have studied arithmetic in vain.

It will also be noted from the provision last quoted above that the sale was on a unit price basis with 400 feet designated for each unit and that the estimate applied only to the number of rolls, but that the amount of footage in each roll or unit was definitely specified. The defendant emphasizes the provision in the contract that the purchaser was warned to inspect the property. These sales were nationally advertised and the plaintiffs were more than 2,000 miles distant. The entire contract, including the noncontroversial items, was for less than $2,000 and the controversial items for less than $1,000.

Even if the plaintiffs had seen fit to employ an expert on films to inspect the property, it would have apparently been very difficult to determine anything definite in packaged material of this kind, especially as to the length of a film enclosed in a package.

Neither the pleadings nor the brief disclosed how these films were packaged. Was an inspector supposed to unwrap each of the 322 units and measure the lengths of each roll?

Attention is also called to the fact that item 11 of this particular contract, though not directly in issue here, contained provision for 28 units of 100-foot film. It seems altogether possible that the shipping clerks made a mistake and filled item 12 with units off the 100-foot pile. If this is true, an inspection would not have been helpful because an inspector would probably not be permitted to direct the actual loading of the packages.

It is asserted by the plaintiffs in their brief that they received a shipment, designated item 10, which consisted of 400-foot rolls. This is not denied by the defendant. The admitted facts indicate that it was a loading clerk's mistake. He must have loaded item 12 from the wrong stack. Must the distant purchaser be completely responsible for errors in which he had no part?

According to the pleadings and briefs, the 322 rolls of 100-foot film included in item 12 were absolutely worthless to plaintiffs.

A careful reading of the special contract provision for adjustment, when laid alongside the contract descriptions of item 12 which definitely state that the item contains 400-foot rolls, and which descriptions then give the number of rolls as estimated by the word "estimate" in this provision, leads to the conclusion that the word estimate does not apply to the length of the film but only to the number of rolls.

The "as is, where is" provision of the contract is a strong one and we have repeatedly held that ordinarily the purchaser takes his chance on the quality of the goods and the quantity as well. But as indicated in Standard Magnesium Corp. v. United States, 241 F.2d 677 (10th Cir. 1957), and as was indicated in United States v. Silverton, 200 F.2d 824, 828 (1st Cir. 1952), if the variation is so extreme as to make the situation a ridiculous one, the buyer would be protected.

At any rate, the specific provisions of the contract quoted above clearly lift this case out of the classification of similar contracts heretofore considered by this and other courts and these provisions call for a different conclusion and result.

The wrong type of film was shipped. The discrepancy was not discovered until after finally being received at destination. The film was worthless for the purposes purchased. Should plaintiffs have been bound if the film had only been 50 feet long or even 10 feet long? The line must be drawn somewhere. The provisions of paragraph 20 of the contract quoted above were clearly applicable here since there was more than a 10 percent variation in the quantity delivered under a unit price contract.

The allegations and facts as disclosed by the pleadings and briefs, if they tend to indicate anything, would rather indicate that the mistake was probably made by a shipping clerk in loading the wrong packages.

I would deny defendant's motion and grant plaintiffs' motion for summary judgment. If this is not to be done, then both motions should be overruled and the facts determined as to who is responsible for this manifest mistake.